**LOCAL UNION NO. 1229, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS v. NATIONAL LABOR RELATIONS BOARD.**

No. 11235.

United States Court of Appeals
District of Columbia Circuit.

Argued April 16, 1952.

Decided Nov. 20, 1952.

Writ of Certiorari Granted May 4, 1953.
See 73 S.Ct. 865.

Louis Sherman, Washington, D. C., for petitioner.

A. Norman Somers, Assistant General Counsel, National Labor Relations Board, Washington, D. C., for respondent.

Before EDGERTON, PROCTOR, and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

While bargaining over the terms of a new contract, the technicians of Station WBTV, Charlotte, North Carolina, were discharged by their employer, the Jefferson Standard Broadcasting Company, for distributing what has come to be termed the "second-class" handbill. It reads as follows:

"Is Charlotte A Second-Class City?

"You might think so from the kind of Television programs being presented by the Jefferson Standard Broadcasting Co. over WBTV. Have you seen one of their television programs lately? Did you know that all the programs presented over WBTV are on film and may be from one day to five years old? There are no local programs presented by WBTV. You cannot receive the local baseball games, football games, or other local events because WBTV does not have the proper equipment to make these pickups. Cities like New York, Boston, Philadelphia, Washington receive such programs nightly. Why doesn't the Jefferson Standard Broadcasting Company purchase the needed equipment to bring you the same type of programs enjoyed by other leading American cities? Could it be that they consider Charlotte a second-class community and only entitled to the pictures now being presented to them?

"WBTV Technicians" [1]

In a complaint filed with the Board, the Local Union, representing the technicians, contended that publication and distribution of the handbill was a concerted activity protected by § 7 of the National Labor Relations Act, as amended,[2] and that the discharges were an unfair labor practice. The Board's Trial Examiner agreed. The Board, however, one member dissenting, reversed his decision. It excluded from protection the "second-class" handbill phase of the "otherwise concededly lawful and protected" peaceful picketing sponsored by the Union. The Union now seeks modification of that part of the Board's order.

Despite the broad language of § 7, which assures employees the "right to * * * engage in * * * concerted activities for the purpose of collective bargaining or other mutual aid or protection," certain activities are excluded from the Act's protective ambit. For example, the Act expressly prohibits jurisdictional strikes, secondary boycotts and strikes for recognition in defiance of a certified union.[3] And the courts have denied protection to employees resorting to "unlawful" *means, e. g.,* a strike in contravention of the purpose of the Act,[4] in violation of a federal statute forbidding

1. J.A., pp. 51.-52.

2. 49 Stat. 449 (1935), 29 U.S.C.A. § 151 et seq. (1946), as amended, Labor Management Relations Act, 61 Stat. 136 (1947), 29 U.S.C.A. § 141 et seq. Section 7 of the Act provides that "Employees shall have the right * * * to engage in * * * concerted activities for the purpose of collective bargaining or other mutual aid or protection * * *." 61 Stat. 140 (1947), 29 U.S.C.A. § 157. Section 8(a) (1) makes it an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7". And § 8(a) (3) makes it an unfair labor practice for an employer "By discrimination in regard to hire or tenure of employment * * * to encourage or discourage membership in any labor organization". 61 Stat. 140 (1947), 29 U.S.C.A. § 158(a) (1, 3).

3. 61 Stat. 141 (1947), 29 U.S.C.A. § 158 (b) (4) (A, C, D).

4. National Labor Relations Board v. Sands Mfg. Co., 1939, 306 U.S. 332, 344, 59 S.Ct. 508, 83 L.Ed. 682, concerted action in breach of a collective bargaining agreement; Scullin Steel Company, 65 N.L. R.B. 1294 (1946), strike for a wage increase during life of a contract, enforced as modified, National Labor Relations Board v. Scullin Steel Co., 8 Cir., 1947, 161 F.2d 143.

188

mutiny,[5] or of local laws prohibiting acts of violence or seizure of property;[6] or seeking "unlawful" *objectives, e. g.,* concerted action to force an employer to violate a federal statute.[7] The Board, with the approval of the House Committee of Conference handling the bill which became the Labor Management Relations Act, "has been consistently applying the principles established by the courts."[8]

Protection under § 7 of the Act, then, is withdrawn only from those concerted activities which contravene either (a) specific provisions or basic policies of the Act or of related federal statutes, or (b) specific rules of other federal or local law that is not incompatible with the Board's governing statute. The Supreme Court has indicated that "[t]he conduct thus protected is lawful conduct."[9] And Judge Learned Hand, in a case involving a union publication which severely criticized the employer's business dealings, said: "[S]o long as the 'activity' is not unlawful, we can see no justification for making it the occasion for a discharge * * *."[10] More recently the Board in the Hoover Co. case reiterated the correct rule when it declared that it is "not free * * * to measure concerted activity in terms of whether the conduct is wise or fair, or satisfies standards which we think desirable."[11]

■ The Board properly applied this rule to the extent that it found that the *objective* of the "second-class" handbill "—to extract a concession from the employer with respect to the terms of their employment—was lawful."[12] But the Board did not apply this rule to the handbill as a *means* for achieving that objective.[13] Instead of determining the legality or illegality of the use of the handbill, it only found that, unlike other handbills used in the dispute which were signed by the Union and made reference to the pending negotiations, this one was "hardly less *'indefensible'* than acts of physical sabotage"[14]—apparently primarily because its purpose was undisclosed on its face.[15] It denied protection under § 7, saying that "the gist of their appeal to the public was that the employer ought to be boycotted because he offered a shoddy product to the consuming public— not because he was 'unfair' to the employees who worked on that product."[16] By giving "indefensible" a vague content different from "unlawful,"[17] the Board

5. Southern Steamship Co. v. National Labor Relations Board, 1942, 316 U.S. 31, 40, 47–48, 62 S.Ct. 886, 86 L.Ed. 1246, seamen on strike away from home port.

6. National Labor Relations Board v. Fansteel Metallurgical Corp., 1939, 306 U.S. 240, 253–258, 59 S.Ct. 490, 83 L.Ed. 627, sit-down strike violates local statutes and common law forbidding seizure of property.

7. Hoover Co. v. National Labor Relations Board, 6 Cir., 1951, 191 F.2d 380, "* * * If the company * * * had recognized the * * * union during the pendency of the representation proceedings, it would have been guilty of an illegal act; and a boycott to compel it to commit an unlawful act would obviously be for an unlawful purpose." 191 F. 2d at page 386.

8. H.R.Rep.No.510, 80th Cong., 1st Sess., 38–9 (1947), and the cases cited therein.

9. National Labor Relations Board v. Fansteel Metallurgical Corp., 1939, 306 U.S. 240, 255, 59 S.Ct. 490, 496.

10. National Labor Relations Board v. Peter Cailler Kohler Swiss Chocolates Co., 2 Cir., 1942, 130 F.2d 503, 506, affirming a Board order.

11. The Hoover Co., 90 N.L.R.B. 1614, 1621 (1950), reversed on another ground, i.e., that the concerted action intended to force the employer to violate the Act, Hoover Co. v. National Labor Relations Board, 6 Cir., 1951, 191 F.2d 380. We disagree with the court's suggestion by way of dictum that even if the objectives as well as the means of the boycott were lawful, the protection of the Act could have been withdrawn. 191 F. 2d at page 389 et seq.

12. Board's decision, J.A., p. 16.

13. Board's decision, J.A., p. 17, fn. 18: "We do not reach and do not decide the question, secondarily raised by Respondent, whether the handbill in question constituted actionable defamation."

14. J.A., p. 16. Emphasis supplied.

15. Ibid.

16. J.A., p. 17.

17. The Board, with the exception of one of its own decisions, draws only upon cases

misconceived the scope of the established rule.

■ We think the Board failed to make the finding essential to its conclusion that the concerted activity was unprotected. Sound practice in judicial review of administrative orders precludes this court from determining "unlawfulness" without a prior consideration and finding by the Board.[18]

Since the initial judgment is within the province of the Board, the petition for modification and enforcement of that part of the order before the court is denied, and the case is remanded[19] to the Board for further proceedings not inconsistent with this opinion.

Reversed and remanded.

involving such unlawful means as "sit-down strikes, sabotage, violence or similar conduct." Board opinion, J.A., pp. 13, 14, and fn. 6, which cites. in addition to International Union, U.A.W. v. Wisconsin Employment Relations Board, 1949, 336 U.S. 245, 69 S.Ct. 516, 522, 93 L.Ed. 651; Harnischfeger Corp., 9 N.L.R.B. 676 (1938); and Elk Lumber Co., 91 N.L.R.B. 333 (1950), only those cases mentioned in notes 4–7, supra. In the U.A.W. case, the Supreme Court, merely by way of illustrating that not all concerted activities are protected by § 7 of the Act, quoted the following dictum from an early Board decision: "The question before us is, we think, whether [the] particular activity was so *inde-fensible*, under the circumstances, as to warrant the [employer] under the Act, in discharging the [employees] for this type of union activity." Harnischfeger Corp., 9 N.L.R.B. 676, 686 (1938) (emphasis supplied). The Board's argument in the instant case suggests that the Supreme Court thereby gave approval to withdrawing the protection of the Act where a concerted activity was lawful as to means and objectives. But as we read the U.A.W. case, so far as pertinent here, the Supreme Court held that the Wisconsin statute prohibiting certain concerted activity which was neither forbidden nor legalized by the Labor Management Relations Act was not in conflict with that Act. Applied to the instant case, it would mean that a concerted activity violating valid state law will not be protected by § 7 of the Act. Id. at 255 et seq. Thus the Supreme Court gave no broader meaning

to "indefensible" then "unlawful." That the Court was thinking in terms of "lawful" and "unlawful" as the underlying criteria for the application of protection under the Act is clearly demonstrated. It said:

" * * * No longer can any state, as to relations within reach of the Act, treat otherwise lawful activities to aid unionization as an illegal conspiracy merely because they are undertaken by many persons acting in concert. But because legal conduct may not be made illegal by concert, it does not mean that otherwise illegal action is made legal by concert." 336 U.S. at page 258, 69 S.Ct. at page 523.

Nor can we accept the Board's decision in the Elk Lumber case to support its view in the instant case. For in Elk, as here, the Board found a concerted activity for a "lawful" objective unprotected without finding the means "unlawful." For a discussion raising other doubts on the reasoning in the Elk case, see Note, 60 Yale L.J. 529 (1951).

18. See Federal Power Commission v. Idaho Power Company, 73 S.Ct. 85; Jaffe, Judicial Review: "Substantial Evidence on the Whole Record," 64 Harv.L.Rev. 1233, 1256 et seq. (1951); and Davis, Administrative Law 903 (1951).

19. See National Labor Relations Board v. Virginia Power Co., 1941, 314 U.S. 469, 479–480, 62 S.Ct. 344, 86 L.Ed. 348; Continental Oil Co. v. National Labor Relations Board, 1941, 313 U.S. 212, 214, 61 S.Ct. 861, 85 L.Ed. 1292; Phelps Dodge Corp. v. National Labor Relations Board, 1941, 313 U.S. 177, 194–197, 200, 61 S.Ct. 845, 85 L.Ed. 1271.