John F. LE BUS, Regional Director of the Fifteenth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

GENERAL TRUCK DRIVERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS, LOCAL NO. 270 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, AFL–CIO, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL–CIO and its agent Murray W. Miller, Trustee for its Local No. 270, Respondents.

Civ. A. No. 5854.

United States District Court
E. D. Louisiana, New Orleans Division.

June 11, 1956.

Alvin Lieberman, Washington, D. C., for petitioner.

Fred J. Cassibry, New Orleans, La., L. N. D. Wells, Jr., Dallas, Tex., for respondents.

J. SKELLY WRIGHT, District Judge.

This proceeding is before the court on a petition filed by the Regional Director of the Fifteenth Region of the National Labor Relations Board seeking an injunction against respondents restraining them from engaging in secondary boycotts within the meaning of Section 8(b), Subsection (4) (A) and (B), of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (4) (A, B). The Act empowers the Board, upon the filing of appropriate charges, to issue, hear and determine complaints that employers or labor organizations have engaged in or are engaging in unfair labor practices within the meaning of the Act,[1] and, pending such proceedings before the Board, the proper officer of the Board is authorized[2] to petition any district court of the United States for injunctive relief wherever preliminary investigation by him of the charges provides reasonable

1. Section 10(a) (b) and (c), 29 U.S.C.A. § 160(a–c).

2. Section 10(l), 29 U.S.C.A. § 160(l).

cause to believe that the charges are true and that a complaint should issue. The court in such instance is not called upon to decide whether in fact the charge of unfair labor practices is true. Once petitioner has shown that there is reasonable cause to believe the charge is true, the temporary injunction should issue. The ultimate determination of the truth of the charge and the existence of a violation of the Act affecting commerce is reserved exclusively to the Board, subject to review by the appropriate Court of Appeals, pursuant to Section 10(e) and (f) of the Act.

The Regional Director of the Board, after investigation, concluded that there was reasonable cause to believe that respondents here have committed unfair labor practices affecting commerce and, therefore, seeks in these proceedings an injunction to restrain further commission of these practices until the question of their legality may be passed on in due course by the Board. He predicates his conclusion on the following facts.

Genuine Parts Company, a Georgia corporation whose main office is located in Atlanta, is engaged in rebuilding, distributing and selling automotive and machine parts, and, in connection therewith, operates a multi-state chain of warehouses serving areas in about sixteen states, including a warehouse located at 855 Baronne Street, New Orleans, Louisiana. In the conduct of its business, Genuine annually purchases merchandise valued at more than $500,000, which is received by it at its New Orleans warehouse from points outside the State of Louisiana.

On April 2, 1956, respondents demanded that Genuine recognize and bargain with them as the collective bargaining representative of Genuine's New Orleans warehouse employees although none of the respondents has been certified by the Board as the representative of those employees under the provisions of Section 9 of the Act, 29 U.S.C.A. § 159. On Genuine's refusal to accede to this demand,

respondents on April 6, 1956 struck Genuine. Since then respondents have been legally picketing at Genuine's New Orleans warehouse where its warehouse employees are on duty throughout their working day.

Employees of trucking and other companies with which Genuine regularly does business refused to cross the picket line to deliver or pick up merchandise at the struck warehouse. Thereupon Genuine contracted with Arthur Fontaine, an independent drayman, to furnish trucking services. In addition, Genuine leased a truck which it operates with its own employees. Respondents, in furtherance of their strike against Genuine, have followed Fontaine's truck and the truck leased by Genuine to companies doing business with Genuine, and have picketed at the premises of those companies in the vicinity of said trucks although those companies are in no way involved in Genuine's dispute with respondents. As a result of this picketing, the employees of the secondary employers have refused to handle freight consigned to or by Genuine.

Petitioner contends that, as a result of the picketing by respondents, Section 8(b), Subsection (4) (A) and (B), of the Act have been violated in that the object of the picketing, which resulted in the concerted refusal of employees of secondary employers to perform the duties under their employment, was to force the secondary employers to cease transporting the products of Genuine and to force Genuine to recognize or bargain with respondents who have not been certified as representative of Genuine's employees under the provisions of Section 9 of the Act.

Respondents maintain that ambulatory picketing is lawful where it conforms to the criteria outlined in the Moore Dry Dock case.[3] They argue that where, as here, the ambulatory picketing does conform to that criteria, damage to the business of the secondary employer resulting from the refusal of its employees to cross

3. 92 N.L.R.B. 547.

the picket line is incidental and subject to the right of the union to publicize its dispute with the primary employer.

Congress in Section 8(b), Subsection (4) (A) and (B), while recognizing the right of labor organizations to bring pressure to bear on primary employers in labor disputes, has sought to shield neutral employees from damage resulting from labor disputes not their own. In these subsections of the Act, Congress has made it unlawful for a union to engage in or to encourage strikes or work stoppages among employees of neutral employers where the object thereof is to force the neutral employers to cease doing business with the struck employer. In attempting to implement the Congressional mandate, the National Labor Relations Board has sought in its decisions to outline the conditions under which picketing affecting secondary employers would be considered lawful. These conditions are outlined in Moore Dry Dock, supra.[4]

Recently the Board has sought to add an additional condition to be met before picketing on the premises of neutral employers would be approved. The new condition is that where the primary employer has a place of business at which its employees may be reached by the union's picketing and publication of its labor dispute, ambulatory picketing on or near the premises of neutral employers comes under the proscription of Subsection (4) (A) and (B).[5] The Board, instead of attempting to determine in each case, as required by these subsections of the Act, whether the object of the picketing of the secondary employer is to persuade it, through strikes of its employees, not to do business with the primary employer, has sought a formula which may be used as a guide in making this determination. Unfortunately, no formula or other mechanical means can produce the right answer in every case. It is " 'the *objective* of the unions' secondary activities * * * and not the *quality of the means* employed to accomplish that objective, which was the dominant factor motivating Congress in enacting that provision.' " International Brotherhood of Electrical Workers, Local 501, v. National Labor Relations Board, 341 U.S. 694, 704, 71 S.Ct. 954, 959, 95 L.Ed. 1299. All the facts of each case must be studied in order to determine the legality of the union's secondary activities. No one fact can be necessarily conclusive. Sales Drivers, etc., v. National Labor Relations Board, D.C.Cir., 229 F.2d 514; National Labor Relations Board v. General Drivers, etc., 5 Cir., 225 F.2d 205.

■■ Without attempting to analyze the various cases which have been written on this subject, it may be well to state some of the principles which seem to be evolving therefrom. Ambulatory picketing as such is not proscribed by the Act.[6] There is nothing in the Act which limits the right of the union by picketing or otherwise to express and publicize its grievances with the employer at any place where a sympathetic audience may be found. The union may not, however, punish neutral employers by strikes and other concerted action in an effort to bring pressure to bear on the primary employer.[7]

No serious problem arises where all of the employees of the struck employer

---

4. These conditions are that the picketing disclose clearly that the dispute is with the primary employer only, that the picketing is limited to times when the dispute situs is on the neutral employer's premises, that the primary employer is engaged in its normal business at the common situs when the picketing takes place, and that the picketing is confined to areas reasonably close to the situs of the dispute.

5. Washington Coca-Cola Bottling Works, Inc., v. National Labor Relations Board,

107 N.L.R.B. 299, 303, affirmed 95 U.S. App.D.C. 117, 220 F.2d 380; Southwestern Motor Transport, 115 N.L.R.B. 155; W. H. Arthur Company, 115 N.L.R.B. 183.

6. Bakery and Pastry Drivers and Helpers Local 802, etc., v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178; National Labor Relations Board v. Service Trade Chauffeurs, etc., 2 Cir., 191 F.2d 65.

7. National Labor Relations Act, Section 8(b), Subsection (4) (A) and (B).

perform their entire day's work at that employer's plant. Complications do arise, however, where some of such employees are required to perform their services at a common situs with employees of neutral employers. Apparently, if these employees working at the common situs are not available at the primary employer's plant, at least some portion of their working day, ambulatory picketing at the common situs is legal in spite of the fact that employees of neutral employers at the common situs may refuse to cross the picket line. National Labor Relations Board v. Local Union No. 55, 108 N.L.R.B. 363, 364–366, enforced 10 Cir., 218 F.2d 226; National Labor Relations Board v. Chauffeurs, Teamsters, etc., 106 N.L.R.B. 629, 632–639, enforced 7 Cir., 212 F.2d 216. Where, however, employees of the primary employer spend part of their work day at the common situs and part at the plant of the primary employer, confusion in the cases arises.[8] It is this confusion which the Board has sought to resolve by mechanical application of its principle based on the availability of employees at the premises of the primary employer.

In the case at bar, unquestionably all of the employees of the struck employer are available at its plant or offices at least part of every day. In fact, with the exception of the independent drayman, Fontaine, who may be considered as an ally of Genuine in the dispute,[9] and the drivers of Genuine's rented truck, all of the employees are at Genuine's place of business all day. In addition, the picketing at the premises of secondary employers, albeit only when Genuine's trucks were present, has caused disruptive walkouts and work stoppages. The struck employees of the neutral employers have also been seen conferring near the premises with representatives of respondent union supervising the picketing.

It may well be, as respondents contend, that these facts do not demonstrate a violation of Subsection (4) (A) and (B) of Section 8(b) of the Act. But it is not necessary for this court to make that determination. Since the facts here clearly demonstrate that there is reasonable cause to believe that a violation of the Act may have been committed, it is the duty of this court to maintain the status quo by enjoining the questioned activity until its legality can be definitively passed on by the exercise of the expertise of the National Labor Relations Board. It is for the Board to determine, after a full hearing, whether the objectives of the union's secondary activity are illegal under the Act. This court's statutory authority is exhausted when it finds, as it does, that on the showing made here, the evidence points in the direction of illegality.

Decree for petitioner.

8. See National Labor Relations Board v. Truck Drivers & Helpers, etc., 111 N.L.R.B. 483, enforced 5 Cir., 228 F.2d 791; Washington Coca-Cola Bottling Works, Inc. v. National Labor Relations Board, supra. Compare Sales Drivers, etc., v. National Labor Relations Board, supra; National Labor Relations Board v. General Drivers, etc., supra.

9. See National Labor Relations Board v. Truck Drivers & Helpers, etc., supra, 228 F.2d at page 797.