No. 40,543

Hyde Park Dairies, Inc., *Appellee,* v. International Brother-
hood of Teamsters, Chauffeurs, Stablemen and Helpers of
America, Local Union No. 795, Affiliated with American Federa-
tion of Labor and International Brotherhood of Teamsters, Chauf-
feurs, Warehousemen and Helpers of America, an Unincorporated
Labor Organization or Association; S. E. Smith, Individually,
and as Business Agent of said Labor Organization; and all other
members, agents and representatives of said Labor Organization
whose names are unknown to Plaintiff and therefore cannot be
given, as Individuals and Representatives of said Labor Organi-
zation, *Appellants.*

(321 P. 2d 564)

Opinion filed February 14, 1958.

*Russell Cranmer,* of Wichita, argued the cause and *Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr., Dale B. Stinson, Jr., Cliff W. Ratner, William L. Fry, Bernard V. Borst, A. Wayne Murphy, D. Clifford Allison,* and *Gerald D. Lasswell,* all of Wichita, were with him on the briefs for the appellants.

*Carl T. Smith,* of Wichita, argued the cause and *George B. Powers, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris,* and *Gerald Sawatzky,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HALL J.: This is an appeal from a temporary injunction issued by the district court of Sedgwick County against the appellant labor union.

On May 25, 1956, the plaintiff appellee, Hyde Park Dairies, Inc., filed a petition in the district court of Sedgwick County, Kansas, praying for injunction against the defendant appellant union and its business agent.

The petition alleged: that the plaintiff was a Kansas corporation engaged exclusively in the business of manufacturing and selling ice cream, milk and other dairy products solely within the state of Kansas; that the plaintiff owned, operated and conducted its business in Wichita, Kansas; that all the products processed at its plant together with other dairy products distributed by it, were sold and distributed within the state of Kansas and none outside the state of Kansas; that in connection with this operation the plaintiff employed approximately eighteen (18) individuals as truck drivers who delivered plaintiff's products within the city of Wichita; that the relation between the plaintiff and employees had always been harmonious and satisfactory and that no grievance existed between them.

The petition then further alleged: that the defendants caused their agents, servants and/or members, none of whom were employed by plaintiff, to patrol or picket on and over the entrance of the markets and grocery stores in Wichita, Kansas, where the plaintiff delivered its products and that in addition to such patrolling and picketing these persons also delivered to each and every individual entering these markets and grocery stores a pamphlet entitled "The Hyde Park Story"; that as a result of such activities at least one market notified plaintiff and did in fact cease doing business with the plaintiff.

That plaintiff was deprived of his right to carry on business and that such picketing and distributing of literature was carried on with the purpose of inflicting irreparable damage to plaintiff's business.

That the defendants were engaged in a combination conspiracy to injure or destroy the good will, trade, business and/or property of plaintiff.

That these activities of the defendants were in violation of the laws of the state of Kansas and in particular in violation of Chapter 44, Article 8, 1955 Supplement to the General Statutes of Kansas 1949.

The plaintiff prayed that the defendants be restrained and enjoined from:

(a) Picketing and patrolling directed against the plaintiff beyond the area of its plant at 943 McLean Boulevard, Wichita, Kansas, and in particular from picketing and patrolling directed against the plaintiff at the stores and markets described in the petition and coercing and intimidating customers

of said retail stores who sell dairy products of the plaintiff by distributing material directed against the plaintiff and its products;

(*b*) Continuing its conspiracy;

(*c*) From attempting to coerce plaintiff or its customers;

(*d*) From combining, agreeing or conspiring in any manner to injure or destroy the good will, trade, business and/or property of plaintiff etc.

The next day, May 26, 1956, the defendants filed their motion to dismiss the plaintiff's petition. In brief, this motion was that the plaintiff's business affected interstate commerce and any dispute involved was within the meaning of the Labor Relations Act of 1947 (29 U. S. C. A. § 141 *et seq.*) and that the district court was without jurisdiction to hear the controversy.

In order to expedite the matter before the court the parties agreed to an immediate hearing and stipulated to all the uncontroverted facts of the case.

While the parties could not agree on the times, places and exact nature of all events leading up to the picketing, these additional essential facts are stated in the record:

Sometime in January, 1956, some five months before the picketing and injunction, fourteen of the eighteen truck driver employees of the plaintiff authorized by election the defendant union as their collective bargaining agent. The union notified the plaintiff that it had so been designated but the plaintiff declined to so negotiate. The union then petitioned the regional director of the NLRB for an investigation and certification of its representation. On March 14, 1956, the regional director declined stating:

". . . as there is insufficient evidence of effect of the Company's operations upon interstate commerce to meet the jurisdictional requirements of the National Labor Relations Board. . . ."

The union then petitioned the State Commissioner of Labor to assume jurisdiction and to determine the representative of the employees for the purpose of collective bargaining. Pursuant to this petition the State Labor Commissioner caused an election to be held. Thirteen of the eighteen employees designated the defendant union as its bargaining representative. The State Labor Commission notified the plaintiff of the results of the election.

Thereafter and up until the time of the picketing and injunction the parties were unable to agree by stipulation as to the time, place and circumstances of defendant union efforts to negotiate with the plaintiff. The defendant union introduced as exhibits a number of

letters written to plaintiff Hyde Park Dairies, Inc., in an effort to negotiate.

The matter was decided by the district court on the pleadings and stipulations of the parties, and on the 25th day of May the court made the following findings of fact pertinent to this appeal:

"1. That the plaintiff is a corporation. . . . That its principal place of business is . . . Wichita, . . . Kansas, but it also extends its routes into the adjoining territory, all within the State of Kansas.

"2. That the defendant, Chauffeurs, Teamsters, and Helpers Local Union No. 795 is a labor union with its principal place of business [in] . . . Wichita, Kansas, and it has been designated as the bargaining agent for eighteen truck driver employees of plaintiff by the Department of Labor of the State of Kansas. . . .

"3. That . . ., the defendants caused its agents, and representatives, none of whom have been in the employ of plaintiff to commence the patrolling and picketing of grocery stores and markets selling Hyde Park Dairy products, located in the City of Wichita, Kansas. Such activity consisted of carrying banners on the front and back of the individuals engaged in such patrolling activity and in delivering printed material consisting of two and one-half legal pages in length, entitled 'The Hyde Park Story,' requesting the public to refrain from purchasing Hyde Park products until such time as the Hyde Park Dairies, Inc., decides to bargain with the defendants and consummate a working condition contract covering its employees.

"4. That all of the eighteen truck drivers and route salesmen employed by plaintiff continued their regular work with the plaintiff, . . .

"5. That all the employees of the grocery stores and markets which were picketed by the defendants continued to perform all of their normal employment duties, . . .

"6. That the plaintiff's right to carry on its business . . . is a valuable property right, and such patrolling activity is an interference with such property right. That the WRL Supermarket, . . . in Wichita, . . . purchased plaintiff's dairy products but has ceased to purchase dairy products from plaintiff since commencement of such patrolling activity as a result thereof; but there was no demand or request by the defendants or their representatives on the WRL Supermarket to discontinue the handling of plaintiff's dairy products, but that it will continue to refrain from so purchasing such products as long as such patrolling activity continues. . . .

"7. That the picketing and patrolling activity . . . in front of and adjacent to the retail stores and markets in Wichita, Kansas, handling the products of the plaintiff is unlawful, and the same should be discontinued, . . .

"8. That the distribution of the literature entitled 'The Hyde Park Story,' a copy of which is attached to the petition as Exhibit 'A,' is not unlawful, and that no injunction should be granted the plaintiff against the distribution of such literature.

"9. That . . . such injury to plaintiff's business is irreparable.

"10. That the plaintiff purchased directly from outside the state of Kansas

supplies and equipment for the fiscal year ending December, 1955, in the sum of $185,215.53 and purchased supplies and equipment from local jobbers which originated from outside the state of Kansas in the sum of $64,525.25. The Safeway Stores, Inc., and the Kroger Company are both engaged in interstate commerce and subject to the jurisdiction of the National Labor Relations Board, and the WRL supermarket is not subject to the National Labor Relations Board. The court concludes that it has jurisdiction of this action.

"11. The defendants' agents and officers did verbally, on one or more occasions, and in writing on four different occasions, request the plaintiff's officers and agents to meet with them to negotiate an agreement covering the truck driver route salesmen employees of the plaintiff. The plaintiff did not accede to the defendants' request.

"12. That the plaintiff's truck driver route salesmen deliver the plaintiff's dairy products at the retail grocery stores of the Kroger Company, Safeway Stores, Inc., and the WRL Supermarkets at which the defendants were picketing, . . . The WRL Supermarket is on a cash basis with plaintiff. The local general office of the Safeway Stores, Inc., and Kroger Company remit to plaintiff once each week or once every two weeks for the dairy products they purchase from plaintiff.

"13. That a temporary injunction should be granted . . . enjoining them from picketing or patrolling in front of or adjacent to any of the grocery stores, markets or other locations at which Hyde Park Dairies, Inc., products are being sold at retail, . . ."

Upon these findings the court made appropriate orders.

At the outset one preliminary matter must be disposed of. The trial court found that appellee made direct yearly purchases of supplies and equipment from without the state in the amount of $185,215.53 and indirect out-of-state purchases in the sum of $64,525.25; that two of appellee's customers were engaged in interstate commerce and subject to the jurisdiction of the NLRB and that one of its customers was not so engaged; and concluded that it had jurisdiction of the action. Appellee's original position in this appeal was that its business did not sufficiently "affect" interstate commerce to subject it to federal jurisdiction, and even if it did, the NLRB had declined to exercise jurisdiction and therefore the state court properly exercised jurisdiction by reason of its residual power which was limited only by the actual extent of federal occupation.

Between the time of the district court's decision to assume jurisdiction and the submission of the appeal here the United States Supreme Court decided *Guss v. Utah Labor Board,* 353 U. S. 1, 1 L. Ed. 2d 601, 77 S. Ct. 598; *Meat Cutters v. Fairlawn Meats,* 353 U. S. 20, 1 L. Ed. 2d 613, 77 S. Ct. 604; and *San Diego Unions v. Garmon,* 353 U. S. 26, 1 L. Ed. 2d 618, 77 S. Ct. 607, which held in effect

that in the absence of a cession agreement under Section 10 (a) of the Act (29 U. S. C. A. § 160 [a]), state courts are excluded from disputes within the jurisdiction of the NLRB, even where the Board has declined or would decline to exercise jurisdiction.

This limitation on state jurisdiction was recognized and followed by this court in a series of recent cases: *Friesen v. General Team & Truck Drivers Local Union No. 54*, 181 Kan. 769, 317 P. 2d 366; *Asphalt Paving v. Local Union*, 181 Kan. 775, 317 P. 2d 349; *Binder v. Local Union No. 685*, 181 Kan. 799, 317 P. 2d 371; *Stieben v. Local Union 685*, 181 Kan. 832, 317 P. 2d 436; *Newell v. Local Union 795*, 181 Kan. 898, 317 P. 2d 817. In the Friesen case the court said:

"Where Congress has vested in the National Labor Relations Board jurisdiction over labor relations matters *affecting* (*interstate*) *commerce*, it is *held* that Congress has pre-empted the field by placing exclusive jurisdiction in the National Labor Relations Board and completely displaced state power to deal with such labor matters. (*Guss v. Utah Labor Board*, 353 U. S. 1, 77 S. Ct. 598, 1 L. Ed. 2d 601.)" (Syl. 1.)

In oral argument appellee abandoned both of its original jurisdictional arguments and conceded that its business "affected interstate commerce" and that, in the absence of a cession agreement, it was subject to the jurisdiction of the NLRB.

The picketing of the plaintiff's customers by *stranger pickets* does not defeat the jurisdiction of the NLRB. The picketing here was not by the employees of plaintiff but by what is generally referred to as *stranger pickets*. While there is a lack of uniformity in the decisions on the effect, if any, of such picketing, this court has followed *Garner v. Teamsters Union*, 346 U. S. 485, 98 L. Ed. 228, 74 S. Ct. 161, in holding such picketing does not in any way defeat the primary jurisdiction of the NLRB in an otherwise pre-empted case under the Labor Management Relations Act. (*City Motors v. International Ass'n of Machinists, Lodge No. 778, A. F. of L.*, 179 Kan. 157, 292 P. 2d 1102; *Kaw Paving Co. v. International Union of Operating Engineers*, 178 Kan. 467, 290 P. 2d 110; *Texas Const. Co. v. H. & P. E. Local Union No. 101*, 178 Kan. 422, 286 P. 2d 160.)

Ordinarily on appeal the findings and conclusions of the trial court would be examined and this court would determine whether there was sufficient competent evidence to support the findings and/or whether the rules of law applied were correct. Because of the change in the jurisdictional aspects of the case, discussed above, we must look primarily to the contentions of the parties.

The appellant union's position may be summarized as follows:

Since the controversy is "pre-empted" it is in the exclusive jurisdiction of the National Labor Relations Board.

It also denies it engaged in any acts whatsoever which were illegal either under the law of the state of Kansas or under the federal law. More specifically, it contends the picketing in which the union engaged was a "concerted activity for the purpose of collective bargaining and other mutual aid and protection," and as such was protected by Section 157 of the National Labor Relations Act (29 U. S. C. A. § 157) and the Labor Management Act of Kansas (G. S. 1949, 44-803 as amended). It also cites Section 158 (a) (5) (29 U. S. C. A. § 158 [a] [5]). Further, that its picketing was a lawful exercise of freedom of speech guaranteed by the First and Fourteenth Amendments to the United States Constitution and thereby not a *prohibited* activity under Section 158 (b) (4) of the National Labor Relations Act (29 U. S. C. A. § 158 [b] [4]).

Section 157 (29 U. S. C. A. § 157) provides as follows:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, *and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection,* . . ." (p. 235.) (Emphasis ours.)

And section 158 (a) (5) (29 U. S. C. A. § 158 [a] [5]):

"It shall be an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159 (a) of this title."

Section 159 (a) provides generally for the selection of union representatives for the purpose of collective bargaining.

The Kansas statute is very similar. G. S. 1949, 44-803 provides:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, *and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection,* . . ." (Emphasis ours.)

The appellee company's position may be summarized as follows:

Notwithstanding the fact the matter may "affect interstate commerce" and the National Labor Relations Board may thus have jurisdiction, it is not "pre-empted" completely because the picketing prohibited by the district court is a type of conduct neither *protected* nor *prohibited* by the federal act, and, therefore, for such reason alone, is subject also to state jurisdiction.

The company contends that the picketing enjoined by the district

court is not *prohibited* by the Act for the reason that the picketing did not coerce anyone to join a union, and was not in violation of Section 158 (b) (4) (29 U. S. C. A. § 158 [b] [4]). It was not aimed at inducing *employees* to cease working or handling goods in the course of their employment. The picketing instead coerced *employers* to cease doing business with plaintiff. Picketing of this type the company concedes, though it may be illegal under state law, is not *prohibited* under the federal act.

The company also contends the picketing enjoined by the district court is not a *protected* activity under the Act, for the reason that the union was not attempting to exercise its right to concerted activity under Section 157 of the Act (29 U. S. C. A. § 157). To the contrary, the picketing was unlawful under state law and Section 157 does not excuse concerted activities which are themselves independently unlawful.

It cites *National Labor Rel. Bd. v. Peter C. K. Swiss Choc. Co.,* 130 F. 2d 503; *Labor Board v. Fansteel Corp.,* 306 U. S. 240, 83 L. Ed. 627, 59 S. Ct. 490, 123 A. L. R. 599; *Local Union No. 1229, Etc. v. National Labor Relations Bd.,* 202 F. 2d 186; *Auto. Workers v. Wis. Board,* 336 U. S. 245, 93 L. Ed. 651, 69 S. Ct. 516; *Milwaukee Boston Store Co. v. Amer. Fed. of H. W.,* 269 Wis. 338, 69 N. W. 2d 762; *Adams Dairy v. Burke,* 293 S. W. 2d 281, certiorari denied 352 U. S. 969, 1 L. Ed 2d 323, 77 S. Ct. 360; *Arnold Bakers, Inc. v. Strauss,* 153 N. Y. S. 2d 999; *Seven Up Etc. Co. v. Grocery Etc. Union,* _____ Cal. App. 2d _____, 301 P. 2d 631.

The company further contends that the picketing enjoined, which cannot be considered *protected* by the federal act was independently unlawful and against the public policy of the state of Kansas under the provisions of Kansas statutes and judicial decision. More particularly the company calls attention to G. S. 1955 Supp., 44-809 (13) which provides that it shall be unlawful for any person to picket "beyond the area" of an industry within which a labor dispute arises. The company also states the union's picketing at the neutral retail stores, having the tendency and effect of coercing them to cease doing business with plaintiff, *while not a secondary boycott within the Kansas statute (G. S. 1955 Supp., 44-809a) which is patterned after the Federal Act (29 U. S. C. A. § 158 [b] [4],* was a common law secondary boycott, and, therefore, unlawful and enjoinable. Finally the company contends defendant's picketing was in restraint of trade in violation of G. S. 1949, 50-101, 102 and 112 and contrary to the public interest provision of G. S. 1949, 44-617.

On the common law boycott appellee states there is no Kansas case directly in point but cites *Bull v. International Alliance,* 119 Kan. 713, 241 Pac. 459, as clearly expressing a common law policy against picketing which interferes with business property rights.

It shall be particularly noted both parties concede that a state "may not *prohibit* the exercise of rights which the federal Acts *protect*" and "may not enjoin under its own labor statute conduct which has been made an 'unfair labor practice' under the federal statutes" (*Weber v. Anheuser-Busch, Inc.,* 348 U. S. 468, 474, 475, 99 L. Ed. 546, 75 S. Ct. 480; *Asphalt Paving v. Local Union,* 181 Kan. 775, 781, 317 P. 2d 349); and maintain that the picketing here was not *prohibited* activity under Section 158 (b) (4) of the National Labor Relations Act (29 U. S. C. A. § 158 [b] [4]).

The findings and conclusions of the trial court did not resolve the conflict of these contentions.

Although, on the one hand, the court found the union designated as a bargaining unit and the purpose of the defendant union's picketing was an appeal to the public until the company decided to bargain with the union, it did not find such purpose either *protected* under Section 157 of the Act (29 U. S. C. A. § 157) or under the state statute. On the other hand, in finding that the picketing was an interference with the rights of the plaintiff and "unlawful" it did not specify the state law, statutory or otherwise, upon which it so concluded.

In this state, generally speaking, two types of cases involving labor disputes have been decided in recent years.

In *Newell v. Local Union 795,* supra and *Binder v. Local Union No. 685,* supra, this court held that the disputes did not affect interstate commerce and the state courts clearly had jurisdiction of the actions. In those decisions the court was governed by the decisions of the United States Supreme Court, which hold in effect that picketing in businesses subject to the jurisdiction of the states is protected under constitutional free speech guarantees unless the *purpose* of the picketing or the *methods* employed by the pickets contravenes the civil or criminal law of the state. (*Teamsters Union v. Vogt, Inc.,* 354 U. S. 284, 1 L. Ed. 2d 1347, 77 S. Ct. 1166 and cases cited therein.)

While this court has built up no extensive body of precedent on the picketing or other activities which are lawful under the state labor law or unlawful by reason of that law or other state law or

judicial decision, in the Newell and Binder cases it held the pickets' *purposes or methods* unlawful and enjoinable.

In the other type of labor cases the disputes affected interstate commerce and the only question was whether the activities were *protected* or *prohibited* by the federal labor Act. (*Stieben v. Local Union 685*, supra; *Asphalt Paving v. Local Union*, supra; *Friesen v. General Team & Truck Drivers Local Union No. 54*, supra; *City Motors v. International Ass'n of Machinists, Lodge No. 778, A. F. of L.*, supra; *Kaw Paving Co. v. International Union of Operating Engineers*, supra; *Texas Const. Co. v. H. & P. E. Local Union No. 101*, supra; *Amalgamated Meat Cutters, Etc. v. Johnson*, 178 Kan. 405, 286 P. 2d 182.) In each of these cases the court held the state court pre-empted because an alleged unfair labor practice, within that section of the federal Act prohibiting such practices, was involved in the conduct sought to be enjoined.

For a helpful discussion of the Kansas cases and the general area of federal-state problems in the field of labor law, consult Hopson, "Kansas Labor Law and District Court Injunctions," Vol. 6, No. 1 University of Kansas Law Review (October, 1957).

The case at bar "affects" interstate commerce and comes within the second group of cases cited above.

Assuming *arguendo*, that the picketing here is not *prohibited* activity under Section 158 (b) (4) (29 U. S. C. A § 158 [b] [4]) as the parties maintain, on appeal the only point to be determined is whether the conduct at issue is either *prohibited* or *protected* under Sections 157 and 158 (a) (29 U. S. C. A. §§ 157, 158 [a]) of the Act, so as to defeat completely state jurisdiction.

While many authorities have been cited by both parties, the case of *Weber v. Anheuser-Busch, Inc.*, supra, seems to be the most analogous to the facts here. In that case an unfair labor practice charge against the union had been filed by the employer with the National Labor Relations Board alleging violation of Section 158 (b) (4) (d) of the Act (29 U. S. C. A. § 158 [b] [4] [d]). The employer then obtained an injunction in the state court alleging; as here, that the union strike constituted among other things an "illegal conspiracy," "a common law secondary boycott," and "restraint of trade" under the laws of the state.

The court held the state was without power to enjoin for the alleged violations of these or any other state laws. In so deciding the court said: ". . . Certainly if the conduct is eventually found

by the National Labor Relations Board to be *protected* by the Taft-Hartley Act, the State cannot be heard to say that it is enjoining that conduct for reasons other than those having to do with labor relations. . . ."

Furthermore, if the activity is *prohibited* or *protected* under the federal Act, a state may not intervene to effectuate its own labor policy, to effectuate a policy unrelated to that on which federal supremacy is exercised.

The court discussed the question of *protected* and *prohibited* activities quite extensively. It recognized that the area of federal pre-emption is not subject to a precise delimitation, largely because the meaning of the parts of Section 158 of the federal Act outlawing unfair labor practices and the area of protected concerted activity under Section 157 "have not been clearly or consistently bounded by the NLRB or the courts." Notwithstanding this uncertainty the court pointed out that some general guideposts are available.

Where the business "affects interstate commerce" the federal board's machinery for dealing with certification problems also carries implications of exclusiveness, thus a state may not certify a union as the collective bargaining agent for employees where the federal board, if called upon, would use its own certification procedure. (*Weber v. Anheuser-Busch, Inc.,* supra; *LaCrosse Tel. Corp. v. Wis. Board,* 336 U. S. 18, 93 L. Ed 463, 69 S. Ct. 879.)

The same result is reached even if the federal board has refused certification, as here, if the employer is subject to the Board's jurisdiction. (*Bethlehem Co. v. State Board,* 330 U. S. 767, 91 L. Ed. 1234, 67 S. Ct. 1026; *Guss v. Utah Labor Board,* supra; *Meat Cutters v. Fairlawn Meats,* supra; *San Diego Unions v. Garmon,* supra.)

Essentially it is not within the power or competence of a court—state or federal—to determine whether an activity is in fact *protected* or *prohibited* by the federal Act. Ultimately only the NLRB can make this determination. (*Weber v. Anheuser-Busch, Inc.,* supra; *Garner v. Teamsters Union,* supra.)

In determining, therefore, whether an activity is *protected* or *prohibited* under Sections 157 and 158 of the Act (29 U. S. C. A. §§ 157, 158) *a state court need only to determine that the facts reasonably bring the controversy within the sections and if so should decline jurisdiction.* In *Weber v. Anheuser-Busch, Inc.,* supra, the court said:

. ". . . But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting

these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance." (p. 481.)

Kansas recognizes this limitation on state power. (*Asphalt Paving v. Local Union*, supra; *Amalgamated Meat Cutters, Etc. v. Johnson*, supra; *Kaw Paving Co. v. International Union of Operating Engineers*, supra.)

The Supreme Court has held specifically that where the conduct sought to be enjoined is an unfair labor practice, the state court must decline jurisdiction. (*Garner v. Teamsters Union*, supra; *Capital Service, Inc. v. Labor Board*, 347 U. S. 501, 98 L. Ed. 887, 74 S. Ct. 699; *Building Trades Council Et Al. v. Kinard Construction Co.*, 346 U. S. 933, 98 L. Ed. 423, 74 S. Ct. 373; *Plankinton Packing Co. v. Wisconsin Employment Relations Board Et Al.*, 338 U. S. 953, 94 L. Ed. 588, 70 S. Ct. 491.) It has ruled that the right to bargain collectively (*Hill v. Florida*, 325 U. S. 538, 89 L. Ed. 1782, 65 S. Ct. 1373) and to strike peacefully to enforce demands for wages, hours and working conditions (*Automobile Workers v. O'Brien*, 339 U. S. 454, 94 L. Ed. 978, 70 S. Ct. 781; *Bus Employees v. Wisconsin Board*, 340 U. S. 383, 95 L. Ed. 364, 71 S. Ct. 359) are within the protection of the Act.

In *Mine Workers v. Arkansas Flooring Co.*, 351 U. S. 62, 100 L. Ed. 941, 76 S. Ct. 559, a union which represented a majority of the employees eligible to be represented, but which had not filed the data or affidavits described in Sections 9 (f), (g) and (h) of the Act (29 U. S. C. A. § 159 [f], [g] and [h]), picketed the primary employer who had denied recognition to the union. The Court declared that in the absence of any bona fide dispute as to the existence of the required majority of eligible employees, the employer's denial of recognition to the union would violate Section 158(a)(5) of the Act (29 U. S. C. A. § 158[a][5]), and that since an unfair labor practice or *prohibited* activity was involved, the state court would be without jurisdiction. Furthermore, the union's primary picketing for recognition was *protected* activity under Section 157 (29 U. S. C. A. § 157).

Although the scope of *protected* activities under Section 157 has not been defined, in the absence of a clear case involving injurious conduct which the NLRB is not empowered to prevent, apparently all picketing which is not an unfair labor practice must be consid-

ered *protected*. It does protect the right to strike, peacefully picket and boycott for purposes and methods not prohibited by Section 158 (29 U. S. C. A. § 158). (*International Union v. O'Brien*, supra; *Amalgamated Association v. Wisconsin Employment Relations Board*, supra; *G. C. Breidert Co. v. Sheet Metal Etc. Assn.*, 139 C. A. 2d 633, 294 P. 2d 93; *Garner v. Teamsters Union*, supra.)

In the Garner case, the Supreme Court declared:

"The detailed prescription of a procedure for restraint of specified types of picketing would seem to imply that other picketing is to be free of other methods and sources of restraint. For the policy of the national Labor Management Relations Act is not to condemn all picketing but only that ascertained by its prescribed processes to fall within its prohibitions. Otherwise, it is implicit in the Act that the public interest is served by freedom of labor to use the weapon of picketing. For a state to impinge on the area of labor combat designed to be free is quite as much an obstruction of federal policy as if the state were to declare picketing free for purposes or by methods which the federal Act prohibits." (p. 499.)

In the Weber case the court recognized the point contended here by appellee that there is an area of activity neither *protected* nor *prohibited* by the federal Act in which the state may exercise jurisdiction. The opinion cites *Allen-Bradley Local v. Board*, 315 U. S. 740, 86 L. Ed. 1154, 62 S. Ct. 820; *Auto. Workers v. Wis. Board*, supra; *Algoma Plywood Co. v. Wis. Board*, 336 U. S. 301, 93 L. Ed. 691, 69 S. Ct. 584; *United Workers v. Laburnum Corp.*, 347 U. S. 656, 98 L. Ed. 1025, 74 S. Ct. 833, all as examples of decisions where the activity was neither *protected* nor *prohibited*.

The areas which have been held subject to state jurisdiction have generally involved injurious conduct which the NLRB is without express power to prevent. Thus in *Allen-Bradley Local v. Board*, supra, a case of mass picketing, threatening of employees, obstructing streets and highways and picketing homes, it was held that the state could exercise "its historic powers over such traditionally local matters as public safety and order and the use of streets and highways." Similarly in *United Workers v. Laburnum Corp.*, supra, the state court was allowed to grant damages based on violent conduct amounting to a common law tort on the theory that no compensatory relief was available under the federal Act. In *Auto. Workers v. Wis. Board*, supra, the state court was allowed to enjoin recurrent, unannounced work stoppages. The court concluded by saying: "the Labor Management Relations Act leaves much to the states, though Congress has refrained from telling us how much.

This penumbral can be rendered progressively clear only· by the course of litigation."

The case at bar does not qualify for this limited area of state jurisdiction.

An examination of the authorities cited by appellee in support of its contentions finds them unpersuasive. It is clear that this is not a case involving means which the NLRB is without express power to prevent. In view of the broad language and obvious intent of the Garner decision, we cannot find that secondary picketing which does not constitute an unfair labor practice under the federal Act is within the realm of state control. (*Milwaukee Boston Store Co. v. Amer. Fed. of H. W.*, supra.) Furthermore, appellee's argument overlooks the provisions of Section 158 (a) (5) (29 U. S. C. A. § 158 [a] [5]) which makes it an unfair labor practice and a *prohibited* activity for the employer to refuse to bargain collectively. And appellee's argument that the activity in question is "independently unlawful" under state law cannot be sustained once it is determined that the controversy is reasonably within the prohibitions and/or protections of the federal Act.

One final point remains before concluding the opinion in this appeal.

In the determination of whether a particular activity of a labor dispute is either *protected* or *prohibited* by the federal or state law the *purpose* and *method* of the activity are all important.

In the ·decided cases *purpose* is described as an elusive thing. The authorities furnish no complete guide for a court to make this determination. In a secondary activity case, *Le Bus v. General Truck Drivers, Chauffeurs, Etc.*, 141 F. Supp. 673, the court said:

". . . Unfortunately, no formula or other mechanical means can produce the right answer in every case. It is 'the *objective* of the unions' secondary activities . . . and not the *quality of the means* employed to accomplish that objective, which was the dominant factor motivating Congress in enacting that provision.' *International Brotherhood of Electrical Workers, Local 501, v. National Labor Relations Board*, 341 U. S. 694, 704, 71 St. Ct. 954, 959, 95 L. Ed. 1299. All the facts of each case must be studied in order to determine the legality of the union's secondary activities. No one fact can be necessarily conclusive. *Sales Drivers, etc., v. National Labor Relations Board*, D. C. Cir., 229 F. 2d 514; *National Labor Relations Board v. General Drivers, etc.*, 5 Cir., 225 F. 2d 205." (p. 676.)

As yet, the decisions of this court contain little precedent to follow. In a sense it may be said *purpose* and *method* have been determined in all of the Kansas cases, but they have been discussed

in only a few. (*Asphalt Paving v. Local Union,* supra; *Newell v. Local Union 795,* supra; *Binder v. Local Union No. 685,* supra.)

In the Binder case this court determined that the purpose of the union activity was organizational and designed to coerce the employees, the plaintiffs in the case, to join a union. Since the case did not "affect" interstate commerce the Kansas law applied and such a purpose under the facts and circumstances presented was unlawful by the provisions of G. S. 1949, 44-803, 808, 809; G. S. 1955 Supp., 44-808, 809; and G. S. 1949, 44-813.

However, the facts of this case present no problem in the determination of purpose and method. The clear purpose of the defendant union's concerted activities was to compel recognition of the union and to consummate a collective bargaining agreement.

It was stipulated by the parties and found by the district court that the appellant union represented a majority of appellee's employees eligible to be represented. In the absence of a bona fide dispute as to majority status, appellee's denial of recognition would violate Section 158 (a) (5) of the Act (29 U. S. C. A. § 158 [a][5]). In any event, the district court also found that the purpose of the secondary picketing was to compel recognition of the union and to consummate a collective bargaining agreement. Such picketing is reasonably within the protection of Section 157 (29 U. S. C. A. § 157).

It is not necessary to consider appellant's argument that its picketing was protected by Kansas law, under G. S. 1949, 44-803. Suffice it is that if this dispute did not "affect" interstate commerce, as the district court found, the court should then have first determined whether the activity was *protected* under that statute or *prohibited* by any related statute, particularly G. S. 1955 Supp., 44-808 which is similar in purpose to Section 158 (a) of the federal Act (29 U. S. C. A. § 158 [a]) and makes it unlawful for any employer, *inter alia,* to interfere with or restrain employees in the exercise of their rights guaranteed under G. S. 1949, 44-803.

It is also not necessary to consider appellant's argument on the extent of protection afforded its picketing by the free speech guarantees of the First and Fourteenth Amendments to the United States Constitution.

As stated above, appellant union's activities may be reasonably deemed to come within the *protection* afforded by Section 157 (29 U. S. C. A. § 157) of the National Labor Relations Act and appel-

lee's conduct may be reasonably deemed to come within the *pro-hibition* of Section 158 (a) (5) of the Act (29 U. S. C. A. § 158 [a] [5]). Under these circumstances the dispute was pre-empted by federal authority and the district court had no jurisdiction to issue the injunction.

The judgment of the district court is vacated and the case remanded with directions to dismiss the action.