**TEXTILE WORKERS UNION OF AMERICA, CIO v. ARISTA MILLS CO.**

No. 6334.

United States Court of Appeals Fourth Circuit.

Argued Nov. 13, 1951.

Decided Dec. 24, 1951.

Robert S. Cahoon, Atlanta, Ga., for appellant.

W. P. Sandridge, Winston-Salem, N. C. (Womble, Carlyle, Martin & Sandridge, Winston-Salem, N. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from a judgment for defendant in a suit instituted by a labor union against an employer for alleged breach of a collective bargaining agreement. The plaintiff alleged that under the agreement employees who had been on strike were entitled to be treated as "laid off" employees with seniority rights and that defendant refused to so treat them and refused to bargain with plaintiff with respect to the matter. The relief asked was a judgment declaratory of their rights, a mandatory injunction for enforcing same and damages alleged to have been sustained by the plaintiff union as a result of the breach of contract. The District Court found that the strike was an economic strike, that the employees in question lost their status as employees upon its termination and that defendant was guilty of no breach of contract in refusing them the rights of "laid off" employees.

There is little if any dispute as to the facts. In June 1950 a representation election was conducted at defendant's plant by the National Labor Relations Board and the plaintiff union was selected as bargaining representative of the employees. Collective bargaining was then entered upon and carried forward in good faith by the union and the defendant. On September 18 about half of plaintiff's employees went out on strike because of a controversy with respect to the wage rate. Defendant gave notice that it would continue to run its mill, would hire other employees to replace those who were on strike and would not discharge those thus employed to make way for strikers upon the termination of the strike. Defendant proceeded on this basis and succeeded in filling all but nine of the positions held by the strikers prior to the strike.

Defendant continued to bargain with the union after the strike commenced, and this bargaining related both to the settlement of the strike and the terms of a general trade agreement. One of the principal obstacles to the settlement of the strike was a controversy relating to the reinstatement of strikers upon its termination. Defendant took the position that it would reinstate only those whose jobs had not been filled. Plaintiff demanded that all be reinstated and that persons employed to take their places be discharged. Defendant's position with regard to the matter was set forth in a written statement sent to plaintiff on November 17 and plaintiff's position in a letter of November 18 replying thereto. In addition to negotiating with defendant, plaintiff had filed with the National Labor Relations Board complaints of unfair labor practices

against defendant, charging that defendant had refused to bargain with plaintiff and was discriminating in regard to hire and tenure of employment against the employees then out on strike.

On November 24 defendant submitted to plaintiff a proposed trade agreement covering all matters that had been in dispute in the various bargaining sessions as well as the matters upon which they were in accord. Article 14, entitled "Scope of Agreement", contained in paragraph 3 the only reference to the existing strike, and provided that, if it should continue beyond the signing of the agreement, the union would waive all seniority and other claims on behalf of strikers whose jobs had been filled at the date of the strike's termination but that nothing in the agreement should be construed by either party as in any way prejudicing the case pending before the National Labor Relations Board. The pertinent provisions of article 14 are as follows:

"3. In the event that the strike, which began September 18, 1950, has not been terminated by the signing of this Agreement, the Union hereby waives all seniority and all other claims on the Company on behalf of those strikers whose jobs have been filled on the date of termination of the strike.

"4. Nothing herein is intended nor may be construed by either party as in any way prejudicing the case pending before the National Labor Relations Board, filed March 10, 1950, and amended July 11, 1950, October 18, 1950, and November 8, 1950."

On December 6 plaintiff called off the strike and notified defendant that it agreed to and would sign the proposed trade agreement, which was signed the same day. Immediately after its signing a controversy arose[1] as to the meaning of the third paragraph of article 14 quoted above, the contention of plaintiff being that the effect of this provision was to preserve the seniority and other rights of the strikers just as though they had been "laid off" employees, the defendant contending that it had no such meaning and offering to rescind the contract if there had been any misunderstanding on the part of plaintiff with regard to this matter. Plaintiff refused to rescind the contract and took the position that by signing it defendant had accepted plaintiff's position as to the status of the striking employees.

The nine positions vacant at the time of the signing of the agreement were filled by plaintiff from employees who had been on strike and four other positions which became vacant during the following thirty days were similarly filled, the employees thus taken back being accorded all seniority and other rights incident to their original employment. As to the other strikers, however, defendant took the position that their employment had terminated because their positions had been filled, that they had no rights as employees because of their prior employment and that any future employment would be without reference to any such rights.

Plaintiff contends that this position of defendant amounted to a violation of the terms of the agreement signed on December 6. Its position is that the employees on strike were employees of defendant within the meaning of that agreement and that the agreement protected them as such against discrimination and assured them seniority rights as employees who had merely been laid off and were entitled to employment as soon as positions were available. Defendant denies that the strikers not reinstated have any rights as employees and denies also the jurisdiction of the court to deal with that matter, contending that the cause of action alleged with regard thereto is nothing more than the charge of an unfair labor practice of which the Labor Board is given exclusive jurisdiction. Two questions are

1. Plaintiff offered evidence to the effect that before the contract was signed the person negotiating in its behalf stated that he understood that under its provisions the strikers would have the status of laid off employees and that defendant's president nodded assent; but this assent was denied by defendant's president and the undisputed facts with respect to the controversy that arose immediately after the contract was signed are inconsistent with its having been given. It is not included in the judge's findings.

presented for our consideration: (1) whether the District Court had jurisdiction of the cause of action alleged, and (2) if so, whether that court rendered the correct decision. We think that, in so far as the complaint alleged breach of contract on the part of defendant with respect to the rights of the former employees, there was jurisdiction in the District Court to hear and decide the case and that the court correctly decided that there was no breach of the agreement on the part of defendant and properly denied the relief sought.

 Section 301(a) of the Labor Management Relations Act 29 U.S.C.A. § 185(a) vests jurisdiction in the District Courts of suits for violation of contracts between an employer and a labor organization in an industry affecting commerce. That section provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Whether the effect of this language, as argued, was to create a new substantive right or not, it unquestionably provides a remedy and a forum for its enforcement. Shirley Herman Co. v. International Hod Carriers Bldg. & Common Laborers Union of America, Local No. 210, 2 Cir., 182 F.2d 806, 17 A.L.R.2d 609. Its effect clearly is to provide that suits may be maintained in the district courts by and against labor unions for violation of collective bargaining contracts made in industries "affecting commerce." American Federation of Labor v. Western Union Tel. Co., 6 Cir., 179 F.2d 535, 538; Schatte v. International Alliance, etc., 9 Cir., 182 F.2d 158; Studio Carpenters Local Union v. Leow's, Incorporated, D. C., 84 F.Supp. 675; Wilson & Co. v. United Packinghouse Workers, D. C., 83 F.Supp. 162; note 17 A.L.R.2d 625. There is nothing to the contrary in Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 167 F.2d 183, 186. That case held merely that suit for injunction would not lie to restrain an unfair labor practice or to recover damages on account thereof; and the ground of the decision was that Congress intended that proceedings before the National Labor Relations Board should be the exclusive remedy for unfair labor practices. There is nothing in that case nor in the act itself to support the position that breaches of contract between unions and employers may not be redressed in the courts.

 We do not mean to say that, merely because a bargaining contract may forbid unfair labor practices, the courts have jurisdiction to afford relief against them under guise of relieving against breaches of contract. As we said in Amazon Cotton Mill Co. v. Textile Workers Union, supra, "It is perfectly clear, both from the history of the National Labor Relations Act and from the decisions rendered thereunder, that the purpose of that act was 'to establish a single paramount administrative or quasi-judicial authority in connection with the development of federal American law regarding collective bargaining'; that the only rights made enforceable by the act were those determined by the National Labor Relations Board to exist under the facts of each case; and that the federal trial courts were without jurisdiction to redress by injunction or otherwise the unfair labor practices which it defined." We think it clear that parties may not by including a provision against unfair labor practices in a bargaining agreement vest in the courts jurisdiction to deal with matters which Congress has placed within the exclusive jurisdiction of the National Labor Relations Board. Where, however, substantive rights with respect to such matters as positions or pay are created by bargaining agreements, there is no reason why the courts may not enforce them even though the breach of contract with regard thereto may constitute also an unfair labor practice within the meaning of the act. As said by Chief Judge Jones in Reed v. Fawick Airflex Co., D. C., 86 F.Supp. 822, 823–824: "It is clear that this Court has no jurisdiction to entertain a petition for relief as to unfair labor practices. Whether acts which constitute unfair labor practices under the statute have been committed by an employer and, if so, what rem-

edies will be prescribed for the employees are matters within the exclusive jurisdiction of the Board. * * *

"If, however, a particular act is the subject of an agreement between employer and union and the union sues for breach of that contract, the District Court could not be ousted of its jurisdiction to hear and determine the case merely because the act constituted not only breach of contract but also an unfair labor practice."

Our conclusion on the first question is that, while there was no jurisdiction in the court to grant relief with respect to any refusal to bargain, which, if established, would be an unfair labor practice within the exclusive jurisdiction of the Labor Board, Amazon Cotton Mill Co. v. Textile Workers Union of America, supra, the court did have jurisdiction to grant relief with respect to the alleged breaches of contract relating to refusal to accord to striking employees the status and rights to which they were entitled under the bargaining agreement.

We think, however, that the District Judge was unquestionably correct in holding that the striking employees whose places had been filled ceased to be employees upon the termination of the strike and that since no provision had been made with respect to them in the bargaining contract of December 6, there was no breach of that agreement by defendant in refusing to recognize seniority and other rights on their part. It is true, of course, that the employee status of the striking employees continues so long as the strike is current. 29 U.S.C.A. § 152(3), provides "The term 'employee' shall include * * * any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute * * *." The evidence clearly establishes, however, and the judge found that the strike here involved was an economic strike and that it was not current but had come to an end when the agreement was signed. The law is well settled that, in the case of an economic strike, the employer has the right to continue his business by employing new men for the jobs left by the strikers and is not bound to discharge them and take strikers in their places when the strike is

ended. Great Southern Trucking Co. v. N.L.R.B., 4 Cir., 127 F.2d 180; Pacific Gamble Robinson Co. v. N.L.R.B., 6 Cir., 186 F.2d 106, 109; N.L.R.B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 345–346, 58 S.Ct. 904, 910, 82 L.Ed. 1381. As said by the Supreme Court in the case last cited: "Nor was it an unfair labor practice to replace the striking employees with others in an effort to carry on the business. Although section 13 * * * provides, 'Nothing in this Act shall be construed so as to interfere with or impede or diminish in any way the right to strike,' it does not follow that an employer, guilty of no act denounced by the statute, has lost the right to protect and continue his business by supplying places left vacant by strikers. And he is not bound to discharge those hired to fill the places of strikers, upon the election of the latter to resume their employment, in order to create places for them. The assurance by respondent to those who accepted employment during the strike that if they so desired their places might be permanent was not an unfair labor practice, nor was it such to reinstate only so many of the strikers as there were vacant places to be filled."

The rule applicable was stated by the Labor Board in Standard Insulation Co., 22 N.L.R.B. 758, 767, as follows: "Their positions with the company having thereafter been filled by others, their concerted strike activities having been abandoned and the strike having been terminated by November 15, 1939, *the strikers may no longer claim to remain 'employees' of the company solely by reason of the pendency of the present proceeding.* Having, in the absence of unfair labor practices, undertaken to exercise their right to strike, they cannot escape the risks incident thereto. *The labor dispute, having assumed the form of a strike, ceased to be 'current' with the termination of the strike.* The strikers who did not return to employment with the company consequently lost their status as 'employees' within the meaning of section 2(3) of the act." (Italics supplied.)

In the case before us the status as employees of those on strike was maintained so long as the strike was current; but that

status came to an end when the strike was settled, and there is nothing in the agreement of December 6 that gives them the status of employees or confers any other rights upon them. Plaintiff relies upon the third paragraph of the 14th article, quoted above, but there is nothing in that paragraph which has that effect. On the contrary, it is perfectly clear that the purpose of the paragraph was to waive rights if the strike should continue beyond the signing of the contract, a condition that did not occur, not to create rights that would not exist otherwise. The provision was inserted in the proposed contract at a time when it was not known whether or not the strike would continue beyond the adoption of the contract, and to make certain that persons who might be on strike when it was signed would have no rights under its provisions. It does not attempt to define what rights such persons would have, leaving this, under paragraph 4, to the determination of the Labor Board, whose jurisdiction with respect to the matter had already been invoked.

For the reasons stated, we think that the District Court properly denied relief and dismissed the action.

Affirmed.