181 Kan. 769 (1957)
317 P.2d 366
LEON V. FRIESEN and KATHERINE M. FRIESEN, Appellees,
v.
GENERAL TEAM AND TRUCK DRIVERS LOCAL UNION No. 54, Hutchinson, Kansas, affiliated with INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA: CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL UNION No. 795, affiliated with INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA; GEORGE FITE; S.E. SMITH; CLARENCE KING; JOE HUGHES; and the Agents, Servants, Employees and Members of the aforesaid persons and organizations, Appellants.
No. 40,247
Supreme Court of Kansas.
Opinion filed October 5, 1957.
Russell Cranmer, of Wichita, argued the cause; Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr., Dale B. Stinson, Jr., Cliff W. Ratner, William L. Fry, A. Wayne Murphy, Ray A. Overpeck, Bernard V. Borst, H.K. Greenleaf, Jr., and D. Clifford Allison, all of Wichita, were with him on the briefs for appellants.
Pa rick H. Thiessen, of Hutchinson, argued the cause; A. Lewis Oswald and and William L. Mitchell, both of Hutchinson, were with him on the briefs for appellees.
The opinion of the court was delivered by
SCHROEDER, J.:
The question presented by this appeal is whether Congress, by vesting in the National Labor Relations Board jurisdiction over labor relations matters affecting interstate commerce, has completely displaced state power to deal with such matters where the Board has declined or obviously would decline to exercise its jurisdiction but has not ceded jurisdiction pursuant to the proviso to Section 10(a) of the Labor Management Relations Act, 1947. (61 Stat. 146, 29 U.S.C., § 160[a].)
The district court of Reno County, Kansas, assumed jurisdiction and this appeal is from the judgment of that court temporarily restraining the defendants from picketing plaintiffs' place of business during the pendency of the action.
The appellees, Leon V. Friesen and Katherine M. Friesen, hereafter referred to as plaintiffs, own Le's Terminal, a freight depot located in Hutchinson, Kansas. Freightways, Inc., and Wheelock Brothers bring interstate freight to plaintiffs' freight dock. The plaintiffs' employees unload the interstate freight and deliver such interstate freight to its ultimate destination in the Hutchinson, Kansas, area. The plaintiffs' employees also collect freight bound for interstate shipment in the Hutchinson, Kansas, area and assemble it at plaintiffs' dock. Plaintiffs' employees then load the freight on the equipment of Freightways, Inc., and Wheelock Brothers. All of the freight which plaintiffs handle for Freightways, Inc., and Wheelock Brothers either originates outside the state of Kansas or is bound for shipment to points outside the state of Kansas. Plaintiffs receive in revenue from Freightways, Inc., approximately $15,000.00 per year, and from Wheelock Brothers approximately $1,665.00 per year.
On Friday afternoon, November 18, 1955, one of the defendants, *771 a union member, commenced carrying a banner in the street in front of Le's Terminal. The inscription on the banner read, on one side, as follows:
"Employees of Le's Terminal, Please Join Teamsters, Improve your Wages, Hours and Working Conditions."
and on the other side:
"Employees of Le's Terminal, Through Organization you can Enjoy the Same Benefits as other Union Members."
The banner was not carried on Saturday or Monday, but was carried from 8:30 a.m., to about 5:00 p.m., on Tuesday and again on Wednesday until about 10:00 a.m., at which time the defendants were served with a restraining order. The defendants' activities while picketing in front of the plaintiffs' place of business consisted of walking back and forth in front of plaintiffs' terminal. The picketing was peaceful. The defendant, Fite, informed the plaintiff, Leon V. Friesen, that the picketing constituted a picket line and that the picketing was for organizational purposes. From the time picketing commenced on Friday until the picketing was restrained on Wednesday, no trucks of Freightways, Inc., or Wheelock Brothers delivered freight at plaintiffs' dock.
Ralph Cody, manager of Freightways, Inc., requested defendant, S.E. Smith, to inform him if a picket line was to be placed at Le's Terminal. S.E. Smith, local manager or business agent for the defendant, Chauffeurs, Teamsters and Helpers Local Union No. 795, a labor organization at Wichita, Kansas, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, informed Cody on Saturday that a picket was to be placed at Le's Terminal. The drivers of Freightways, Inc., and Wheelock Brothers are members of the defendant union, Chauffeurs, Teamsters and Helpers Local Union No. 795, and other unions.
The plaintiffs employ three full-time and two part-time employees who do not belong to any labor organization. There is no dispute between the plaintiffs and their employees.
The plaintiffs did not at any time seek relief under the National Labor Relations Act, as amended, by filing charges of unfair labor practices with the Regional Director of the National Labor Relations Board. Instead, the plaintiffs filed their petition for a restraining order and an injunction in the district court of Reno County, Kansas. A restraining order was issued without notice forthwith upon *772 the filing of the petition, restraining defendants from picketing plaintiffs' place of business or their property, pending hearing on plaintiffs' application for a temporary injunction. After hearing on November 30, 1955, the Reno County district court entered judgment temporarily restraining defendants from picketing during the pendency of the action.
The district court found that the plaintiffs received approximately 50 to 55 percent of their total annual revenues from interlining business with Freightways, Inc., and Wheelock Brothers, both interstate carriers, and that their business thus affected interstate commerce within the meaning of the Labor Management Relations Act, 1947. (29 U.S.C., § 152 [6] and [7].) It found that about 90 percent of plaintiffs' interlining business amounting to $15,000.00 per year was done with Freightways, Inc., and approximately $1,665.00 were derived in revenues from Wheelock Brothers.
The district court further found from the facts herein set forth that the objective of the defendants' picketing was to cause Freightways, Inc., and Wheelock Brothers to terminate all business transactions with the plaintiffs, and the court inferred therefrom that the purpose of the defendants' picketing was to starve plaintiffs' business, thereby forcing plaintiffs "to die" or to sign a union contract, incidentally compelling the plaintiffs' employees to become union members. The district court concluded that such practice was prohibited under Kansas law (G.S. 1955 Supp., 44-809 and 809a) and that the defendants' action in general was coercive and illegal.
While the unfair labor practice found by the district court is likewise prohibited by the Labor Management Relations Act, 1947 (29 U.S.C., § 158 [b] [1] [A]) the district court concluded, since the plaintiffs' business affecting interstate commerce was less than $17,000.00 annually, that the National Labor Relations Board under such circumstances would decline jurisdiction in pursuance of its announced jurisdictional policy (the published minimum standards set forth in N.L.R.B. release R-445, 7-1-54, and N.L.R.B. release R-449, 7-15-54, were stipulated by the parties); that any application for relief made by the plaintiffs to the Board would be unavailing; and that appeal to it would be futile. Consequently, the district court under such circumstances held that it had jurisdiction to proceed.
*773 In his memorandum opinion the Honorable John Fontron, judge of the district court of Reno County, Kansas, said:
"... In the absence of authoritative dictate I decline to accede to a view that would, in many instances, prevent the effective enforcement of either state or federal acts both of which proscribe practices deemed inimical to the public welfare. I do not concede that society is powerless, due to legalistic niceties or specious reasoning, to protect all its members, however small, from prohibited practices."
The defendants strictly limit this appeal to the question of jurisdiction. The issue simply stated is: Do the state courts of Kansas have jurisdiction over cases concerning unfair labor practices affecting interstate commerce where such practices are prohibited by State and Federal laws and where it would be futile to apply for federal jurisdiction?
At the time this decision was announced in the lower court, December 17, 1955, the Supreme Court of the United States in Building Trades Council et al. v. Kinard Construction Co., 346 U.S. 933, 74 S.Ct. 373, 98 L.Ed. 423, had expressly declined to pass upon the question whether a state court had power to exercise jurisdiction in labor relations matters affecting interstate commerce where an appeal to the National Labor Relations Board would be futile. The court in its Per Curiam opinion said:
"... Since there has been no clear showing that respondent has applied to the National Labor Relations Board for appropriate relief, or that it would be futile to do so, the Court does not pass upon the question suggested by the opinion below of whether the state court could grant its own relief should the Board decline to exercise its jurisdiction."
Since that date, however, the Supreme Court of the United States has passed upon the question. Irrespective of any opinion which this court may entertain, the decision in the instant case is controlled by a series of three cases, Guss v. Utah Labor Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601; Meat Cutters v. Fairlawn Meats, 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613; and San Diego Unions v. Garmon, 353 U.S. 26, 77 S.Ct. 607, 1 L.Ed.2d 618, all handed down on March 25, 1957.
The arguments presented by the parties in the instant case and the authorities relied upon in support of such arguments, have been fully treated in these cases. The arguments presented by the plaintiffs and the authorities in support thereof are presented by the dissenting opinion of Justice Burton in the Guss case.
*774 The substance of the Guss holding is that Congress has pre-empted the field in labor relations matters affecting interstate commerce and has vested exclusive jurisdiction in the National Labor Relations Board to determine such labor disputes. The court said:
"We hold that the proviso to § 10 (a) is the exclusive means whereby States may be enabled to act concerning the matters which Congress has entrusted to the National Labor Relations Board....
..............
"... And here we find not only a general intent to pre-empt the field but also the proviso to § 10 (a), with its inescapable implication of exclusiveness.
"We are told by appellee that to deny the state jurisdiction here will create a vast no-man's-land, subject to regulation by no agency or court. We are told by appellant that to grant jurisdiction would produce confusion and conflicts with federal policy. Unfortunately, both may be right. We believe, however, that Congress has expressed its judgment in favor of uniformity. Since Congress' power in the area of commerce among the States is plenary, its judgment must be respected whatever policy objections there may be to creation of a no-man's-land.
"Congress is free to change the situation at will, In 1954 the Senate Committee on Labor and Public Welfare recognized the existence of a noman's-land and proposed an amendment which would have empowered state courts and agencies to act upon the National Board's declination of jurisdiction. The National Labor Relations Board can greatly reduce the area of the no-man's-land by reasserting its jurisdiction and, where States have brought their labor laws into conformity with federal policy, by ceding jurisdiction under § 10 (a)...." (pp. 8, 9, 10.)
Section 10 (a) of the Labor Management Relations Act, 1947 (29 U.S.C., § 160 [a]) provides:
"The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: Provided, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominately local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this Act or has received a construction inconsistent therewith." (Emphasis added.)
Since the National Labor Relations Board has not entered into an agreement with any agency of the state of Kansas to cede to such agency jurisdiction pursuant to the proviso in § 10 (a) of the Labor Management Relations Act, 1947, we are forced to conclude that *775 Kansas courts are without power to assert jurisdiction over the labor dispute affecting commerce in the instant case.
The judgment of the lower court is vacated and the case remanded with directions to dismiss the action.