No. 41,299

LOCAL LODGE No. 774 and DISTRICT LODGE No. 70 of the INTERNATIONAL ASSOCIATION OF MACHINISTS, A. F. L.-C. I. O., *Appellees,* v. THE CESSNA AIRCRAFT COMPANY, *Appellant.*

(341 P. 2d 989)

184

Opinion filed July 10, 1959. 

*Hugh P. Quinn,* of Wichita, argued the cause, and *Getto McDonald, William Tinker, Arthur W. Skaer, William Porter, John E. Lancelot* and *Alvin D. Herrington,* all of Wichita, were with him on the briefs for the appellant.

*John C. Frank,* of Wichita, argued the cause, and *Tom Cunningham,* of Wichita, was with him on the brief for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was an action for a mandatory injunction in a labor case. From an order of the trial court overruling defendant's demurrer to plaintiffs' petition, defendant appeals.

The plaintiffs (appellees), Local Lodge No. 774 and District Lodge No. 70 of the International Association of Machinists, A. F. L.-C. I. O., commenced this action against the defendant (appellant), the Cessna Aircraft Company, in the district court by filing a petition wherein they alleged they were unincorporated labor organizations as defined by G. S. 1955 Supp., 44-802, and were authorized to bring this action under G. S. 1949, 44-811; that Local Lodge No. 774 is the collective bargaining labor organization representing the employees of the defendant on all matters relating to grievances, labor disputes, wages, rates of pay, hours of employment and/or conditions of work of the members of its organization as a whole and of each of its individual members; that District Lodge No. 70 is its parent organization and bargaining agent, having its principal offices in Wichita; that the International Association of Machinists, A. F. L.-C. I. O., is an unincorporated association of local labor unions and is affiliated with the A. F. L.-C. I. O., the parent organization, which is an association of national and international labor unions and is the duly recognized, sole collective bargaining agency for defendant's employees, having been so designated by the National Labor Relations Board under date of July 13, 1940, and that at all times material thereto was and is acting as such collective bargaining agent.

It was further alleged that the defendant was a corporation duly organized and authorized to do business in the state of Kansas, with its principal place of business in Wichita; that on June 30, 1955,

plaintiffs and defendant entered into a collective bargaining agreement, which was in effect at all times herein and which provided in pertinent part as follows:

"ARTICLE VI.

"(c) In case of notice of dismissal or a suspension, any employee, if he feels unjustly aggrieved thereby, shall within forty-eight (48) hours give written notice to the Personnel Director's Company Office, or to the Union Shop Chairman, to the effect that he has been unjustly dealt with; such statement shall include the reasons for his request and why his dismissal or suspension be given further consideration. The Personnel Director, or whomever he may designate, and the Union Shop Chairman shall determine within a period of forty-eight (48) hours whether his written request shall constitute a case and be subject to the method of adjusting grievances as herein provided. If the Personnel Director, or whomever he may designate, and the Shop Chairman are unable to reach an agreement, the employee shall be notified and his written notice shall be referred to the Grievance Board.

"(d) Grievance Board.

"The Union and the Company will each select two members who are employees of the Company in each Wichita plant. These four shall be known as the Grievance Board for each plant. One member of each board shall be selected by them as Chairman. The Chairman shall be rotated every four months. Thus, if a representative of the Union is selected as Chairman for the first four months, a representative of the Company shall be selected as Chairman for the next four months. The duties of the Boards shall be to receive and attempt to settle all grievances or disputes which have not been adjusted as provided for in Article VI, Section (b), paragraphs (b) and (c)."

"ARTICLE IX.

"(j) When consistent with efficiency, production and organization, the Company will favor transfer of employees to more desirable shifts in their respective departments before filling openings with new employees. In the selection of employees for such transfers, qualified seniors shall be given first consideration."

"ARTICLE XIV.

"There shall be no discrimination or intimidation against any employee who may be selected to represent himself or other employees on committees or for engaging in other legitimate Union activity."

Plaintiffs alleged that John W. Wink was hired by defendant in November, 1954, and subsequently assigned to department No. 160, where he worked continuously until May, 1956, at which time he developed dermatitis from contact with fiber glass and plastics used in the department; and, as a result, company doctors recommended his transfer to a different department; that on October 1 he was transferred to department No. 137, where his condition improved and where he continued to work until approximately No-

vember 1, at which time he was placed on leave of absence to work for plaintiffs in an organizational drive being conducted in defendant's plant; that on November 19 he returned to his employment and was assigned back to department No. 160, and shortly thereafter began again to develop dermatitis, which condition became increasingly worse and necessitated his taking a leave of absence, from December 7, 1956, to January 3, 1957, to seek and obtain medical treatment. On January 3, he again reported back to work and was informed by defendant's personnel director, Mr. Worford, that it would be necessary for him to accept another leave of absence and that he could not be assigned to any place in the plant other than department No. 160. Wink advised Worford it would be impossible for him to take another leave of absence and was advised, in turn, that if he did not he would be terminated. He was instructed to return the next day.

January 4, Worford gave Wink his termination papers, indicating he had "quit or resigned," and on the same day Wink executed and delivered a grievance in writing to the personnel director's company office, which, omitting the formal parts, reads as follows:

"Cause for Complaint: I am contesting the action that has been instituted against me by the Cessna Aircraft Company. I have been discriminated against in that I contacted a skin irritation or dermititis while employed at my trade at the Prospect Plant. I have had approximately three leaves of absence from the Company due to this condition. I have not been cleared up, but due to the complications of this dermititis I can no longer work in this department under the present conditions. Attempts to clean up the department in this respect was started several months ago but the results are still not sufficient enough that I can work there without breaking out again. The Company offered a Final Assembly job on Second Shift with a 3 grade cut at the time I went to the hospital on a leave. At this time the Company takes the position that there are no job openings, and I can accept no more leaves due to financial conditions. I am not receiving the consideration from the Company that I am entitled to under Article IX, Section J, and I am entering this grievance, citing Article VI, Sect. C of the Union-Company Contract in that I have been unjustly aggrieved and am entitled to more consideration than I have received at the hands of the Cessna Aircraft Company. *Also, there is reason to believe that the Company is in violation as regards Article XIV in my case.* It is also my contention that there has been no sincere indication on the part of the Company to honor Article II of the contract as would apply in my case." [Emphasis supplied.]

Thereafter, defendant notified the representatives and agents of plaintiffs that it did not consider Wink's complaint a grievance and would therefore refuse to submit it to the grievance board, and defendant has continued to so refuse. Plaintiffs alleged that these

actions constituted a violation of the collective bargaining agreement between defendant and plaintiffs, and, as a result, plaintiffs sustained and are continuing to sustain irreparable damage for which they have no adequate remedy at law, and they were therefore entitled to bring this action under G. S. 1955 Supp., 44-809 and 44-814.

Plaintiffs prayed that the defendant be restrained and enjoined from its violation of the collective bargaining agreement, in that it be required to submit Wink's grievance to the grievance board; that it be required to follow the grievance procedure set out in the agreement, and that it be required to comply with the findings and decisions of such board as provided in the agreement.

Defendant filed a demurrer to the petition on the grounds that (1) the court had no jurisdiction of the subject of the action, (2) the plaintiffs had no legal capacity to sue and the action was not brought in the name of the real party in interest, and (3) the petition did not state facts sufficient to constitute a cause of action. The demurrer was overruled and defendant perfected this appeal.

Defendant contends the district court was without jurisdiction of this controversy because the allegations of plaintiffs' petition amount to a charge of unfair labor practice and Congress pre-empted the field on this subject and vested exclusive jurisdiction over such matters in the National Labor Relations Board. Plaintiffs, on the other hand, contend that this is simply an action to enforce the terms of a contract (collective bargaining agreement) and to compel the parties to such contract to recognize, adhere to and perform the duties and obligations contained therein, and that state courts have traditional and statutory jurisdiction to enforce it. The claim is that plaintiffs are entitled to maintain this action under the provisions of G. S. 1955 Supp., 44-809 (15), which make it unlawful for any person [defendant] to violate the terms of a collective bargaining agreement, and under G. S. 1955 Supp., 44-814, which allows an aggrieved party to enjoin such violations.

Of course, whether plaintiffs can maintain their action under our above-mentioned statutes is entirely dependent upon whether Congress pre-empted the field and vested exclusive jurisdiction in the National Labor Relations Board. This is, to say the least, a difficult question. We must start with the premise that where labor practices are either prohibited or protected by the Labor Management Relations Act, 1947, Congress has pre-empted the field in labor relations matters affecting interstate commerce and has vested exclusive

jurisdiction in the National Labor Relations Board to determine such labor disputes. (*Garner v. Teamsters Union*, 346 U. S. 485, 74 S. Ct. 161, 98 L. Ed. 228; *Weber v. Anheuser-Busch, Inc.*, 348 U. S. 468, 75 S. Ct. 480, 99 L. Ed. 546; *Guss v. Utah Labor Board*, 353 U. S. 1, 77 S. Ct. 598, 1 L. Ed. 2d 601.) Some of our own decisions which recognize this principle are *Friesen v. General Team & Truck Drivers Local Union No. 54*, 181 Kan. 769, 317 P. 2d 366; *Asphalt Paving v. Local Union*, 181 Kan. 775, 317 P. 2d 349; *Stieben v. Local Union No. 685*, 181 Kan. 832, 317 P. 2d 436; *Newell v. Local Union 795*, 181 Kan. 898, 317 P. 2d 817. Our most recent pronouncement on the subject is *Hyde Park Dairies v. Local Union No. 795*, 182 Kan. 440, 321 P. 2d 564, wherein we said, at page 451:

"In determining, therefore, whether an activity is *protected* or *prohibited* under Sections 157 and 158 of the Act (29 U. S. C. A. §§ 157, 158) *a state court need only to determine that the facts reasonably bring the controversy within the sections and if so should decline jurisdiction.* In *Weber v. Anheuser-Busch, Inc.*, supra [348 U. S. 468, 75 S. Ct. 480, 99 L. Ed. 546], the court said: '. . . But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance.' (p. 481.)"

In this connection we must bear in mind that essentially it is not within the power or competence of a court—state or federal—to determine whether an activity is in fact *protected* or *prohibited* by the federal Act. Ultimately, only the National Labor Relations Board can make this determination. (*Weber v. Anheuser-Busch, Inc.*, supra; *Garner v. Teamsters Union*, supra; *Hyde Park Dairies v. Local Union No. 795*, supra, 451.) Moreover, the areas which have been held subject to state jurisdiction have generally involved injurious conduct which the National Labor Relations Board is without express power to prevent. (*Hyde Park Dairies v. Local Union No. 795*, supra, 453.) We need not here decide whether the ultimate determination as to whether a refusal on the part of the employer to adhere to the grievance terms of a collective bargaining agreement is protected or prohibited by the federal Act and rests within the jurisdiction of the National Labor Relations Board. A review of the petition and of Wink's grievance complaint attached thereto clearly reveals that plaintiffs not only alleged a refusal to follow the grievance procedure but also alleged discrim-

ination under Article XIV of the contract because of union activities. It has been consistently held, under 29 U. S. C. A., § 158 (a) (3), that a discharge because of union activity is an unfair labor practice as a "discrimination in regard to hire or tenure of employment" over which the National Labor Relations Board has exclusive jurisdiction. (*Swope v. Emerson Electric Manufacturing Co.* [Mo.], 303 S. W. 2d 35, and cases cited therein.)

It is well settled that a state may not enjoin under its own labor statute conduct which has been made an unfair labor practice under the federal statutes (*Weber v. Anheuser-Busch, Inc.,* supra, 474, 475; *Asphalt Paving v. Local Union,* supra, 781), nor may a plaintiff characterize an act which constitutes an unfair labor practice as a "contract violation" and thereby circumvent the plain mandate of Congress that jurisdiction of such matters be vested exclusively in the National Labor Relations Board and that federal and state trial courts are without jurisdiction to redress by injunction, or otherwise, unfair labor practices. (*United Packing House Workers v. Wilson & Co.,* 80 F. Supp. 563, 569.) See also *Textile Workers Union of America v. Arista Mills Co.,* 193 F. 2d 529; *Amazon Cotton Mill Co. v. Textile Workers Union,* 167 F. 2d 183. If the rule were otherwise, then federal or state courts could assume jurisdiction over all types of unfair labor practices under the guise of enforcing the terms of the collective bargaining agreement, provided the agreement contained terms governing such matters, and could thereby circumvent the plain mandate of Congress.

It follows that the judgment of the trial court is reversed and the case is remanded with directions to sustain defendant's demurrer to plaintiffs' petition.

It is so ordered.

JACKSON, J. (dissenting): It is with regret that I find that I cannot accept the decision of the majority opinion. The petition only seeks one thing, a decree of the court commanding the aircraft company to agree to the convening of a grievance board meeting to hear the alleged grievance of John Wink, all as the company is alleged to have agreed to do in the contract between the union and the company. This court or the district court is not being called upon to decide a question of an unfair labor practice nor is it being called to decide in favor of John Wink as to his alleged dispute with the company.

In my opinion, the National Labor Relations Act allows and in-

tends that the courts shall aid the parties in determining their contractual obligations, and by refusing to exercise the court's jurisdiction under the act, the court not only is failing to carry out the spirit of the act, but is putting a stone in the road of peaceful labor relations and surrendering our ancient jurisdiction over breach of contract. All of the authorities, in my humble opinion, so hold, e. g. *Textile Workers Union of America v. Arista Mills,* 193 F. 2d 529; *Timken Roller Bearing Co. v. National Labor Rel. Bd.,* 161 F. 2d 949; *Independent Petroleum W. of N. J. v. Esso Stand. Oil Co.,* 235 F. 2d 401; *Local 205 etc. v. General Electric Company,* 233 F. 2d 85; *Lodge No. 12 etc. v. Cameron Iron Works,* 257 F. 2d 467, cert. denied, 358 U. S. 880, 3 L. Ed. 2d 110, 79 S. Ct. 120; *Plumbers & Steamfitters Union Local No. 598 v. Dillon,* 255 F. 2d 820; *Textile Workers v. Lincoln Mills,* 353 U. S. 448, 1 L. Ed. 2d 972, 77 S. Ct. 912; *McCarroll v. L. A. County etc. Carpenters,* 49 Cal. 2d 45, 315 P. 2d 322.

In my opinion, the district court was entirely correct in overruling defendant's demurrer.

FATZER, J., concurs in the foregoing dissent.