Nos. 41,668 and 41,669

LOCAL LODGE No. 774 and DISTRICT LODGE No. 70 OF THE INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL-CIO, *Appellees* and *Cross-Appellants*, v. CESSNA AIRCRAFT COMPANY, *Appellant* and *Cross-Appellee*.

(352 P. 2d 420)

Opinion filed May 14, 1960.

*Hugh P. Quinn*, of Wichita, argued the cause, and *Getto McDonald, William Tinker, Arthur W. Skaer, William Porter, Alvin D. Herrington, Darrell D. Kellogg*, and *Richard T. Foster*, all of Wichita, were with him on the briefs for appellant and cross-appellee.

*John C. Frank*, of Wichita, argued the cause, and *Tom Cunningham, Pat Kelly*, and *Starr Calvert, Jr.*, all of Wichita, were with him on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

JACKSON, J.: The Unions above named brought a suit in the district court seeking a mandatory injunction commanding the Cessna Company to submit to grievance procedure and to arbitrate a certain grievance filed by the Union on behalf of some three hundred employees of the aircraft company. It was alleged that under the provisions of a bargaining agreement between the Union and Cessna, the company had contracted to follow the grievance and arbitration procedure in such cases. After a trial to the court, the court found that the claims upon the part of the employees involved were individual matters and that the Union was not authorized to file the single grievance on the behalf of all of the employees involved. However, the trial court likewise held that the Union might enforce some twenty-six individual claims of grievance filed by employees personally.

From this decree, Cessna has appealed as to the right of the Union to enforce arbitration of the individual grievances, and the Union has appealed from the decision that it could not enforce its own grievance claim on behalf of all of the employees affected. The appeals were taken at almost the same time and were filed as separate appeals rather than as an appeal and a cross-appeal. Hence, the two numbered cases in this court. We shall make no further mention of this matter since it is of no moment.

We shall continue to refer to the parties simply as the Union and Cessna for the sake of brevity.

The district court made findings of fact which will be summarized herein as the simplest manner of stating the facts surrounding the dispute leading to the present suit. The Union is the bargaining agent for the employees of Cessna at the Pawnee Road plant, which is the Cessna plant involved herein.

The plant and the Union are subject to the National Relations Board and the Labor Management Relations Act. The relations between the Union and Cessna were governed at the time this dispute arose by a bargaining agreement contract entered into by the Union and Cessna on July 1, 1955, which contract was for a two year term ending on July 30, 1957. There had been similar contracts between the parties covering the relations of the parties back to about 1950. A copy of the agreement was attached to plaintiff's petition and was introduced in evidence.

It had been the custom of Cessna to close the Pawnee Road plant for the purpose of taking of the annual inventory around or near the 4th of July of each year.  By notice dated June 11, 1956, Cessna notified the employees in regard to the inventory for 1956.  The notice was placed on the bulletin boards and read as follows:

"INVENTORY

June 11, 1956

"Except for plant protection crews and those assigned to work during the annual inventory, June 30-July 4, inclusive, regular work schedules will be discontinued at the end of the Friday, June 29, second shift until the beginning of first shift, Thursday, July 5. Regular schedules will be in effect Thursday, July 5, and Friday, July 6.  Wednesday, July 4, is a paid holiday."

The plant was closed as provided in the notice except for those employees who volunteered to work on the inventory on Monday, July 2, and Tuesday, July 3.  Wednesday, July 4th was a paid holiday and the plant was closed.  Thursday, July 5 and Friday, July 6 were normal work days.  On July 6, some of the departments were notified to work on Saturday, July 7, and approximately 300 employees worked on that day.

During the following week, between Monday, July 9 and Friday, July 13, there was considerable discussion among the employees and between the inplant chairman of the Union and the employment manager of Cessna with reference to whether or not certain employees were entitled to be paid time and a half wages for work done on Saturday, July 7, under the bargaining agreement.  No conclusion of this argument was announced during the week.  On Friday afternoon, July 13, the employees received their pay checks for the previous week and learned that they were not being paid at the rate of time and a half for work done on July 7.

On Saturday, July 14, the plant being closed, the officials of the Union met, and after discussion, prepared a grievance on behalf of the Union stating that certain employees were entitled under the terms of the bargaining agreement to have been paid time and one-half for work done on Saturday, July 7.  On Monday, July 16, representatives of the Union met with the Cessna personnel manager of the Pawnee plant, discussed the matter with him and submitted the written Union grievance.  For reasons not here material, the personnel manager refused to accept the Union grievance.  It should be stated that part of the reasons given were that it was contended any such grievance was an individual employee matter and that the Union could not file a grievance in its own name.

The trial court found that on July 18, some 26 individual grievances of employees were properly filed under step one of the grievance procedure provided under the bargaining agreement.

Upon the facts summarized above, the trial court concluded that the grievances were individual grievances and that the Union could not file a Union grievance. But the court further concluded that the Union had the right to request that the 26 individual grievances be accepted, submitted to grievance procedure, and finally to arbitration, and that the Union could maintain this suit to enforce that right.

In order to present the exact question in dispute between the parties, certain sections of the bargaining agreement have and will be referred to, and therefore we are setting forth those articles and sections of the agreement as an appendix to this opinion.

It is the contention of the Union and its members that the notice of the company as to the taking of inventory posted in June, 1956, amounted to an instruction to employees not working on the inventory to remain away from work on July 2, and 3 [Article IV (d)]. Thus, it is argued in arriving at the period making up five consecutive days of work, July 2 and 3 are to be counted, even if the employee did not work; July 4, being a paid holiday is to be counted; and therefore, if a man worked July 5, 6, and 7, he should be paid time and one-half for his work on July 7.

The first question for decision in this appeal is as to the right of the Union to maintain this suit to enforce the obligation of Cessna to follow the grievance procedure and to submit grievances to arbitration, if necessary. It may be noted that the trial court found under Finding No. 4 that the Union and Cessna are subject to the provisions of the Labor Management Relations Act, and there can be no doubt about the matter. If that be true, we feel that the above question must be found to have been settled by the decision in *Textile Workers v. Lincoln Mills*, 353 U. S. 448, 77 S. Ct. 912, 1 L. Ed. 2d 972. In that case the United States Supreme Court said in the syllabus:

"A union entered into a collective-bargaining agreement with an employer providing that there would be no strikes or work stoppages and that grievances would be handled pursuant to a specified procedure, the last step of which was arbitration. Grievances arose and were processed through various steps in the grievance procedure until the union's demands were finally denied by the employer. The union requested arbitration, and the employer refused. Thereupon, the union sued in a Federal District Court to compel arbitration. *Held:*

"1. Under § 301 (a) of the Labor Management Relations Act of 1947, the District Court properly decreed specific performance of the agreement to arbitrate the grievance dispute."

The grievances involved in the Lincoln Mills case were as to work loads and work assignments. It does not appear definitely in the opinion whether the actual grievances had been filed by the employees or simply by the union, but certainly the opinion treats the duty to proceed through the grievance procedure and the right of the union to compel arbitration as a right possessed by the union derived from the bargaining agreement made by the union and the employer-company.

It will also be noted that the court states that the law to be applied is federal law, which the courts must fashion from the policy of the national labor laws. Nowhere, however, is there any indication in the opinion that state courts do not have concurrent jurisdiction with the federal courts in enforcing the provisions of the act involved. We shall treat this point more adequately later in this opinion.

In summing up the duty to arbitrate, the court in the Lincoln Mills case said:

"Plainly the agreement to arbitrate grievance disputes is the *quid pro quo* for an agreement not to strike. Viewed in this light, the legislation does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." (p. 455.)

Under the agreement in this case, the promise not to strike is included in Article XX thereof.

On the same day on which the opinion in the Lincoln Mills case was handed down by the Supreme Court, two companion cases were also handed down, *General Electric Co. v. Local 205*, 353 U. S. 547, 77 S. Ct. 921, 1 L. Ed. 2d 1028; and *Goodall-Sanford v. Textile Workers*, 353 U. S. 550, 77 S. Ct. 920, 1 L. Ed. 2d 1031. In both of the last cases the employer was ordered to arbitrate under a union-employer bargaining agreement, and in both cases it definitely appears that the grievance was filed by the union. In both of these cases the actual alleged injury had been suffered by certain employees.

The three above cases brought to compel arbitration under a bargaining agreement are to be distinguished from *Employees v. Westinghouse Corp.*, 348 U. S. 437, 75 S. Ct. 489, 99 L. Ed. 510,

where the union brought a direct action in the court to recover the amount due to four thousand employees for a day's pay.

The distinction is well developed in the case of *United Steelworkers v. Pullman-Standard Car Mfg. Co.,* (3 C. C. A.) 241 F. 2d 547. That case fell under the category of the Westinghouse case, since it was an action to recover money due on an employee's pension. Although the last case was filed before the final decision in the Lincoln Mills case, *supra,* Circuit Judge Hastie in writing the opinion for the Court of Appeals clearly distinguishes the cases where the union seeks to compel arbitration. His discussion has been cited by other Circuit Courts of Appeal, and reads as follows:

"Similar reasoning is applicable to another familiar type of union complaint under Section 301. Collective bargaining agreements usually include provisions which regulate the procedure to be followed by the employer and the union *inter sese* in the handling of grievances and the solving of various other labor problems which may arise in the future. Such regulations of the union-management relationship in the administration of the process of collective bargaining are obviously a special concern of the union as an organization and, in that sense, their enforcement is not a matter 'uniquely personal' to the individual employees. True, the subject matter in dispute may or may not be primarily personal to employees. Any agreed grievance procedure may cover controversies ranging from wage disputes to questions of union recognition. But so long as the matter immediately in issue is an alleged obligation to arbitrate, or negotiate or follow some other procedure in administering the collective agreement the union is directly and primarily concerned. Indeed, adherence to prescribed procedures is the essence of systematic collective bargaining through union representation as distinguished from unregulated individual dealings between employees and employers. In disputes over these procedural and administrative matters it is again not surprising that since the Westinghouse case the federal courts have continued to entertain union actions under Section 301." (Citing cases.)

The following additional decisions by the federal Courts of Appeal may be noted: *Item Company v. New Orleans Newspaper Guild* (5 C. C. A.), 256 F. 2d 855; *A. L. Kornman v. Amalgamated Clothing Workers* (6 C. C. A.), 264 F. 2d 733.

While it can hardly be said that § 301 of the Labor Management Relation Act confers jurisdiction upon the state courts, it does not make the jurisdiction of the federal district court exclusive, and the Act has been held to look to the establishment of a uniform labor-management policy for the nation (*Textile Workers v. Lincoln Mills,* supra). Article VI, clause 2, of the constitution of the United States enjoins upon the state courts the duty to enforce federal law in general. Moreover, our own statutes would seem to allow the pres-

ent suit to be maintained in the state courts, see G. S. 1949, 44-811; G. S. Supp. 1959, 44-809 (15) and 44-814. In *Local Lodge No. 774 v. Cessna Aircraft Co.*, 185 Kan. 183, 341 P. 2d 989, this court indicated that it would normally have jurisdiction of a suit to compel arbitration under a bargaining agreement, but found that in that instance special reason for declining jurisdiction, and see further, *Cooperative Refinery Ass'n v. Williams*, 185 Kan. 410, 345 P. 2d 709. Of course, as to national policy the decisions of the federal courts are entitled to great weight in cases construing the Labor Management Relations Act.

We believe that what has been said above, together with the cases cited adequately disposes of the appeal by Cessna from the decree of the district court holding that the union may enforce arbitration as to the individual grievances filed by the employees. The burden of the cases would appear to be that the Union is interested in the enforcement of its contract with Cessna without regard to who may file the actual grievance. The trial court was certainly correct in its holding on this phase of the case.

The parties have discussed the question of arbitrability to some length in the briefs. It would seem that neither Cessna nor this court may pass upon the question of the merits of the grievance and thereby prevent it from being brought before the grievance board or submitted to an arbitration tribunal. It is true that the question of arbitrability may be considered by the court, if there be a question whether the bargaining agreement covers a certain type of dispute or if the grievance be found to be frivolous. In the case of *Lodge No. 12, v. Cameron Iron Works*, 257 F. 2d 467, will be found a careful discussion of the question of grievances which are arbitrable under bargaining agreements. In *United Steelworkers of America v. American Mfg. Co.*, 264 F. 2d 624, an alleged grievance was found to be frivolous and relief was therefore denied.

In the provisions of the bargaining agreement concerned in this case we find no limitations as to the kind of disputes which either Cessna or the Union may bring before the grievance board or cause to be submitted to arbitration. It must be conceded that the grievance in this case is not frivolous. Cessna urges with great earnestness that the company had been in the habit of conducting the annual inventory in the same manner for a number of years, and that the Union had never before raised the question of overtime pay. Be that as it may, that argument may be a question for the

arbitration board on the merits, but is not for this court to decide.

All other questions raised in the briefs have been carefully considered but require no further comment. From what has been said above, it appears the decree of the trial court is affirmed as to the appeal by Cessna, and as to the appeal by the Union, the decree is reversed to the extent in which it held that the Union could not compel grievance procedure and arbitration of the grievance filed in the name of the Union.

The court should amend its decree of injunction to direct Cessna to arbitrate the grievance filed by the Union as well as the individual grievances. One arbitration should be able to dispose of all of the grievances at one time since there is one common question involved in all of the grievances filed.

It is hereby so ordered.

## APPENDIX

### AGREEMENT

### ARTICLE III—HOURS OF WORK

Both the Company and the Union understand and agree that due to changing conditions of the business of the Company it is impossible to permanently fix definite hours and days of shifts. In the event, however, of any further changes of regular hours or days of shifts, the Company will first take up the matter of making any contemplated changes with the Shop Committee.

### ARTICLE IV—OVERTIME

#### TIME AND ONE-HALF TIME

( a ) All time worked in excess of five consecutive days in any one work week shall be considered as overtime and paid for at the rate of not less than time and one-half time.

---

#### PAID HOLIDAYS

( a ) There shall be six paid holidays, namely, New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving, and Christmas.

---

( d ) In determining consecutive days, it is not necessary that each day worked be a full shift. A day not worked shall not be

considered in calculating consecutive days worked where work is stopped by events beyond the control of the Company. *If the employee is absent at the instruction of the Company or is required to report to a military induction center for physical examination, such days lost will be counted in determining consecutive days of work. The holidays enumerated above shall be considered as days worked whether or not work is performed on these days.* (Italics supplied.)

### ARTICLE VI

#### Section B—Grievance Procedure

(*a*) Shop Committee

The Union will select a committee of employees at each Wichita plant of the Company who will be known as the Shop Committee. This committee shall consist of one Steward from each department covered by this agreement. There shall be only one Steward in each department and he shall represent only that one department. One of these Stewards at each Wichita plant will be designated by the Union as Shop Chairman for each shift. The Shop Chairmen, when necessary in the performance of their duties as outlined under the terms of this agreement, shall have the right to enter any other department in the bargaining unit for the purpose of investigating grievances, job classifications, etc. He shall check off the job with the timekeeper or the office of the foreman in his department and shall check in when returning to regular work.

In case of a transfer by the Company of a Steward or Shop Chairman from one department to another or from one shift to another the Company shall give the Steward or Shop Chairman one week's notice.

#### STEP 1

(*b*) Methods of Handling Grievances.

Any employee who has a grievance shall within three days after the occurrence of the matter complained of present his grievance in writing either to his foreman or supervisor or to his Steward. If the grievance is presented to the Steward and such Steward, after immediate investigation, feels that the employee's complaint is justified, he immediately refers the written grievance to the foreman or supervisor of such employee.

If it is necessary for a conference to be held by the Steward and the foreman or supervisor in order to adjust the grievance, such

conference will be held on Company time. The Steward will check off the job with the timekeeper and check in when returning to regular work. Should such a conference fail to effect a mutually satisfactory settlement within forty-eight (48) hours from the time the written grievance is presented, the matter shall then immediately be referred to the Personnel Director, or whomever he may designate, and the Shop Chairman in their respective plants.

### STEP 2

(c) If such grievance cannot be settled after investigation in a conference between the Personnel Director, or whomever he may designate, and the Shop Chairman within a period of forty-eight (48) hours, then such grievance shall be referred to the Grievance Board.

### STEP 3

(d) The Union and the Company will each select two members who are employees of the Company in each Wichita plant. These four shall be known as the Grievance Board for each plant. One member of each board shall be selected by them as Chairman. The Chairman shall be rotated every four months. Thus, if a representative of the Union is selected as Chairman for the first four months, a representative of the Company shall be selected as Chairman for the next four months. The duties of the Boards shall be to receive and attempt to settle all grievances and disputes which have not been adjusted as provided for in Article VI, Section (b), paragraphs (b) and (c).

Any unsettled grievances the Company may have against the Union or the Union may have against the Company will also be submitted to these Boards. The Grievance Boards shall meet whenever necessary and the meetings shall be held on Company time. The Grievance Boards shall render their decisions within forty-eight (48) hours after the hearings are held. Copies of such decisions shall be sent to the President of the Company, the Union, and the foreman or department head of the shop or department where the grievance originated, and a copy be retained by the Boards.

Should the Grievance Boards fail to reach mutually satisfactory settlements of any disputes, then upon request of either party the entire matter shall be submitted to a Board of Arbitration. Such request must be made within four days from the decisions of the Grievance Boards. If such a request is made, then both the Company and the Union are required to appoint their members of

the Board of Arbitration within three days from such request having been made. The request for arbitration must be in writing.

It is further agreed that the Business Agent of the Union may assist in any phase of the grievance procedure.

STEP 4

(e) Board of Arbitration

(The agreement then provides for the choosing of the Arbitration Board.)